# Richmond

## W. H. Van Winckel v. Cassius C. Carter, Jr.

November 26, 1956.

Record No. 4576.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*F. Rodney Fitzpatrick*, for the appellant.

*Betty A. Thompson (Walter J. Newlon, on brief)*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

[█] This is an equity suit for contribution by Cassius C. Carter, Jr., hereinafter referred to as the plaintiff, against W. H. Van Winckel, hereinafter referred to as the defendant. The plaintiff's bill alleged in substance that the C. & C. Fixture and Manufacturing Company, Inc., a corporation in which the two parties had a common interest as stockholders, directors and officers, had negotiated certain loans from the Alexandria National Bank, secured by the accommodation endorsements of the two parties on the corporation's notes; that at the time of the endorsement of the notes it was agreed by and between the endorsers that they were obligating themselves jointly as sureties for the corporation maker; that the corporation later became insolvent; and that the plaintiff, Carter, was compelled to pay the sum of $8,821.21, the balance due the bank, and was, therefore, entitled to contribution from the defendant, Van Winckel, for $4,410.60, one-half of the amount so paid.

The defendant answered denying any liability for contribution to the plaintiff. He denied that he and Carter had a common interest in the corporation or the business. He alleged that Carter was the sole owner of the corporation and the business; that he (Van Winckel) was a mere employee, and that he endorsed the notes for the accommodation of both Carter and the corporation. By an amended answer the defendant asserted the further defense that the plaintiff's claim was barred by the three-year statute of limitations.

After *ore tenus* hearings the trial court entered a decree overruling the defendant's plea of the statute of limitations and granting the plaintiff's prayer for contribution in the full amount claimed. From that decree the defendant has appealed.

Since the evidence was heard *ore tenus* and the trial court saw and

heard the witnesses, its finding has the force and effect of the verdict of a jury and settles all questions of disputed fact in favor of the plaintiff, Carter. *Lowdon* v. *Lowdon*, 183 Va. 78, 79, 31 S. E. 2d 271, and cases there cited.

Viewed in this light the facts may be stated thus: The C. & C. Fixture and Manufacturing Company, Inc., was organized in 1949 under the laws of the State of Maryland by Carter and Nicholas Pakos, each owning 25 shares of the 50 shares of stock issued. The corporation was first engaged in buying and selling fixtures and restaurant equipment, with its principal office at Mt. Ranier, Maryland. In November, 1949, Van Winckel was employed as sales manager at a salary of $100 a week. At that time he was not a stockholder, director, or officer of the corporation.

In June, 1950, Pakos withdrew from the corporation and its business operations. He endorsed and delivered his certificate of stock to Carter. At this juncture Carter told Van Winckel that he was going to close the business. Carter testified that Van Winckel insisted that this would be a mistake and that they should move to Alexandria, Virginia, have their headquarters in a building owned by Carter, and engage in the manufacture of equipment. Carter finally agreed to this plan and, as he said, "We went over, opened up the shop, we went in the C. & C. Manufacturing business and we were together in the business."

He further testified: "Our deal was that Mr. Van Winckel was to get Pakos's stock for his interest in the business." In further explanation of the terms of the agreement he said: "We were together, we were going to split it down the middle, it was our business, we were going to build it into something—that was it—Van had the know-how on the books and the sales end, I was supposed to run the shop and do the estimating." Carter also testified that pursuant to this agreement he and Van Winckel "owned the corporation."

Van Winckel's version of the agreement is not materially different. He testified: "Well, Mr. Carter said to me that inasmuch as I had the sales connections and had the administrative know-how more than he had, he asked me if I would come over and try to help him out of the hole. He said that he would put up the money if I would put up the know-how." It was further agreed, he said, that neither was to receive a salary from the business but that each would draw a sufficient amount for his living expenses.

Pursuant to this arrangement the corporation moved its head-

quarters to Alexandria. Carter put considerable new money in the business and was in charge of manufacturing the products produced by the corporation. Van Winckel put no money in the business but was in charge of the office and the sales. Each had an equal voice in the management and control of the business; each drew from the business his living expenses.

Pakos's stock was never transferred to Van Winckel. The corporate minutes of the first meeting of the stockholders, held on June 27, 1950, shortly after Pakos had withdrawn, shows Carter present at the meeting and voting 50 shares of stock owned by him. At this meeting Van Winckel was elected a director, vice-president and treasurer of the corporation. At the next annual meeting of the stockholders, held on February 14, 1951, Van Winckel is shown to be a stockholder and was again elected a director. The minutes were signed by Van Winckel as acting secretary. Both Carter and Van Winckel continued as directors and officers until the corporation filed a petition in bankruptcy in December, 1951.

In January, 1951, the corporation sought and obtained a line of credit from the Alexandria National Bank. It is undisputed that in asking for these loans Carter and Van Winckel together went to the bank and talked to E. G. Ridgely, its vice-president. Ridgely testified that he understood from his talk with them that Carter and Van Winckel were "the principal owners of the corporation" and for this reason he required both to endorse the notes as accommodation endorsers. He said that there was no agreement that Van Winckel was endorsing as an accommodation endorser for Carter. Both, he said, were accommodation endorsers for the corporation and "jointly responsible" to the bank.

During the year 1951 the corporation borrowed a total of $31,525 from the bank, for which it gave nine notes, each endorsed in the manner above indicated. All of the funds procured on these loans were used for corporate purposes.

Frank B. Higdon, the accountant who kept the corporate books, testified that he considered Van Winckel to be "a half owner of the company" and not an employee. Norman Bernheimer, the local attorney for the corporation, testified that Van Winckel "expressed just as much power in the affairs" of the corporation as Carter did.

At the time the corporation ceased doing business four of its notes to the bank had been paid, and there was a balance of $8,821.21 due on its five remaining notes. The photostatic copies of these notes show

that each bears the endorsement of Van Winckel, followed by that of Carter. There was no express agreement between the endorsers that they were to be jointly bound as cosureties for the corporate maker of the notes. Nor was there any agreement as to how the notes were to be paid, or by whom if the corporation did not pay them.

Upon this evidence the trial court held that Carter and Van Winckel were engaged in a common enterprise as co-owners of the business; that in effect they were partners conducting the business in the name of the corporation for their joint benefit; that they were "jointly liable" on their endorsements to the bank; and that Carter, having paid the debt for which they were jointly liable, was entitled to contribution from his coendorser, Van Winckel.

We agree with the trial court that the plaintiff was entitled to contribution. There is ample evidence to support the finding that Van Winckel was not a mere employee of the corporation or Carter and that he did not endorse the notes for Carter's accommodation. It is not necessary that we decide whether under the circumstances related the defendant, Van Winckel, became a stockholder along with Carter in the corporation, or whether, as the trial court expressed it, they were partners trading and conducting the business in the name of the corporation. In either event, they were engaged in a joint enterprise for their joint benefit. They jointly endorsed the notes because they were jointly interested in the business. It was to their joint interest that the funds be procured from the bank for the furtherance of that business, and that was done.

There is no merit in Van Winckel's contention that because there was no express agreement between him and Carter that they were to be jointly bound as cosureties on the notes there is no basis for Carter's claim for contribution. If the matter were disposed of on the basis that there was no express agreement between the parties on this subject, this would not benefit Van Winckel. Since, as has been said, each note bore the endorsement of Van Winckel ahead of the endorsement of Carter, they were *prima facie* liable in that order. Code, § 6-420, provides: "As respects one another, indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise. * * *" See *Cox* v. *Hagan*, 125 Va. 656, 100 S. E. 666; *Mann* v. *Bradshaw's Adm'r.*, 136 Va. 351, 118 S. E. 326.

The plaintiff, Carter, makes no contention that by reason of the

order of their endorsement Van Winckel is liable before he (Carter) is. Carter contends that the facts and circumstances show that notwithstanding the order in which they endorsed the notes, it was understood and agreed between them that they were jointly liable and bound to the bank as cosureties for the payment of the debt. As has been said, the loans were procured in furtherance of their joint adventure. The bank required them to endorse jointly as accommodation endorsers, and both knew and understood that such was the effect of their endorsements. This position of Carter is sound and conclusive of the matter. Code, § 6-420, *supra*.

In *Mann* v. *Bradshaw's Adm'r., supra,* we said that "where the evidence discloses that the indorsers of the negotiable paper of a corporation have a like common interest, and none have any peculiar interest, in the purpose for which the paper is negotiated (as where the indorsers are all stockholders or directors of the corporation, or all have other like common interest, and none have any peculiar interest in the matter), and they all indorse the paper without evidencing that there was any thought or designed action on the part of any of them as to the order in which they place their names on the paper, such circumstances will warrant, although they do not compel, the inference of fact that they have agreed among themselves to participate together in the liability; which means, in substance, that they have agreed among themselves to be jointly bound, and hence may be regarded as joint indorsers on the notes indorsed while such relations existed." 136 Va., at pages 371, 372.

Nor was it essential to Carter's right to contribution that he prove that there was an express agreement between him and his coendorser that which one of the two paid the note or notes might look to the other for reimbursement for a proportionate part of the amount so paid. The right to contribution does not arise out of any express agreement or contract, but is based on broad principles of equity that where two or more persons are subject to a common burden it should be borne equally. The law implies a contract between them to contribute ratably toward the discharge of the obligation. See *Wiley N. Jackson Co.* v. *City of Norfolk,* 197 Va. 62, 66, 87 S. E. 2d 781, 784, and authorities there collected.

We further agree with the trial court that the plaintiff's claim for contribution was not barred by the statute of limitations. The facts with respect to this phase of the case are these: When the bank called upon Carter to pay the balance due on the corporation's notes,

Carter offered to execute his note to the bank for the amount due and secure it by a deed of trust on certain real estate owned by him. On December 15, 1951, the bank wrote Carter a letter accepting his offer. The note and deed of trust were dated December 22, 1951, to which date interest on the corporation's notes was figured. The evidence does not show when Carter actually signed the note, but it does show that the deed of trust was acknowledged on January 5, 1952. On the latter date the bank closed its transaction with Carter. It accepted his note for the balance due by the corporation, marked the corporation's notes paid on that date, and delivered them to Carter.

The present suit for contribution was filed on January 4, 1955. The defendant contends that in the meantime the claim had been barred by the three-year statute of limitations, because, he says, the plaintiff's cause of action against him accrued either on December 15, 1951, when the bank agreed on the settlement with Carter, or at best on December 22, 1951, the date of the new note.

There is no merit in this contention. The right to contribution becomes complete and enforceable upon the payment or discharge of the common obligation. *Harper's Adm'r.* v. *McVeigh's Adm'r.*, 82 Va. 751, 757, 758, 1 S. E. 193; *McKay* v. *Citizens Rapid Transit Co.*, 190 Va. 851, 857, 858, 59 S. E. 2d 121, 123, 124; 13 Am. Jur., Contribution, § 88, p. 77; 18 C. J. S., Contribution, § 4, p. 7.

In the case before us it clearly appears from what has been said that the common obligation was paid and discharged by Carter on January 5, 1952, and hence his cause of action against Van Winckel arose on that date.

The decree is

*Affirmed.*