**In re Roscoe Marvin PORTER, Jr., Debtor.**

**Bankruptcy No. 81–02167–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

June 10, 1985.

Robert A. Canfield, Richmond, Va., for Barbara E. Porter.

Miles Cary, Jr., Richmond, Va., for Herbert Weisberger.

James R. Sheeran, Richmond, Va., for Robert E. Hyman, Chapter 7 Trustee.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on April 3, 1985 on the objection by Herbert Weisberger to the allowance of a proof of claim filed by Barbara E. Porter. After the presentation of testimony *ore tenus* and the tendering of stipulations of fact by the parties, the Court took the matter under advisement and directed the parties to file briefs on the issues contained in the case. Upon review by this Court of the testimony, stipulations of fact, and briefs filed in this matter, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Roscoe Marvin Porter, Jr. filed a Chapter 11 petition under Title 11 U.S.C. on December 28, 1981. On motion of Herbert Weisberger filed on January 28, 1982, the case was converted to a proceeding under Chapter 7 of Title 11 U.S.C. on February 24, 1982. Robert E. Hyman was appointed the trustee in bankruptcy. On March 19, 1982, creditors were given notice that claims not filed within six months after April 5, 1982 would not be allowed except as otherwise provided by law. Approximately two years after the time for filing claims had expired but prior to any distribution, Barbara E. Porter, the spouse of the debtor, Roscoe Marvin Porter, Jr., filed a claim on October 24, 1984 in the amount of $30,000. That claim was subsequently amended by reducing the amount to $15,000.

An objection to the allowance of the claim was filed by Herbert Weisberger, an unsecured creditor with a timely filed claim, on February 28, 1985 asserting (1) that both the original claim for $30,000 and the amended claim for $15,000 were not timely filed and did not represent a claim which would be enforceable against the debtor in either law or equity, (2) that Barbara E. Porter and Roscoe Marvin Porter, Jr. participated in a fraudulent conveyance of real and personal property, (3) that Barbara E. Porter failed to turn over to the trustee in bankruptcy the personal property which this Court has previously held to have been fraudulently conveyed and should be disallowed pursuant to 11 U.S.C. § 502(d), (4) and that in the event the claim filed by Barbara E. Porter is allowable, it should be equitably subordinated to the

proof of claim filed by Herbert Weisberger pursuant to the provisions of 11 U.S.C. § 510(c)(1), as a result of her participation in the fraudulent conveyance of the real and personal property of the debtor. Barbara E. Porter filed an Answer on March 25, 1985 denying the allegations contained in Weisberger's objection, including *inter alia,* a denial that Mrs. Porter's claim was not timely filed. However, the Court finds that the record reflects that the claim by Mrs. Porter was not timely filed due to the expiration prior to October 24, 1984 of the time period for filing proof of claims and no evidence having been presented at the hearing to contradict the record.

Shortly after the conversion of the case to Chapter 7 in February, 1982, the trustee in bankruptcy recovered approximately $48,000 from an asset of the debtor's estate. There subsequently ensued litigation by the trustee in bankruptcy against the Porters. *In re Porter,* 37 B.R. 56 (Bankr. E.D.Va.1984). This litigation involved a transfer of residential real estate and a diamond ring by Roscoe Marvin Porter, Jr., to Barbara E. Porter which this Court on January 11, 1984 found to be voidable as violating 11 U.S.C. § 544(b), § 548(a)(1), and § 548(a)(2) as to the transfer of real property and to be voidable under § 544(b) as to the transfer of the diamond ring. *Id.* at 69. The Order entered January 11, 1984 was timely appealed by the debtor and his spouse. On March 26, 1984, the trustee received a settlement offer from Mr. and Mrs. Porter for $55,000 and upon motion filed herein on March 26, 1984, the trustee in bankruptcy noticed creditors of a hearing on the approval of the compromise of that litigation. Objections by creditors were filed to that proposed compromise and this Court declined to approve the settlement agreement at a hearing on April 17, 1984. The District Court, having the adversary proceeding before it on appeal and deciding that the approval of any settlement was within its discretion, entered an Order on June 25, 1984 approving the compromise and dismissing the appeal. That Order was consented to by the trustee in bankruptcy, Roscoe Marvin Porter, Jr.,

Barbara E. Porter, and Herbert Weisberger. Weisberger had been the principal objector to the settlement offer in this Court. The District Court's Order provided for payment of the sum of $55,000 to the trustee in bankruptcy within ninety days of June 25, 1984. Payment pursuant to that Order was timely.

The only other material asset in this estate is an alleged cause of action of the bankruptcy estate against Edward E. Willey, Jr., arising out of an indemnification agreement. This cause of action was liquidated by this Court after proper notice for the sum of $16,000, said cause of action having been purchased by Herbert Weisberger from the trustee in bankruptcy. The Order approving the compromise was entered March 4, 1985 over the objection of the debtor, Roscoe Marvin Porter, Jr., and an appeal to that Order was taken by the debtor on March 13, 1985. That appeal is currently pending before the District Court.

Since the approximate date of the conversion on February 24, 1982, the trustee has had liquidated assets in the sum of approximately $48,000. From approximately September 24, 1984, the trustee has liquidated an additional $55,000 and from March, 1985, the trustee has received an additional $16,000.

Due to the accumulation of earnings from the liquidated assets, the estate is now of sufficient size that after payment of all administrative expenses accorded priority under 11 U.S.C. § 507, the claim of Herbert Weisberger in the amount of $102,685.13 can be paid in full. It is also sufficient to pay all other timely filed claims in full and there will remain sufficient funds to pay the tardily filed claim of Barbara E. Porter pursuant to 11 U.S.C. § 726(a)(3) if allowed by the Court. There may be sufficient funds remaining to pay interest at the legal rate on both timely and tardily filed claims pursuant to 11 U.S.C. § 726(a)(5).

Herbert Weisberger objects both to the amount of the claim of Barbara E. Porter

and to her right to payment, and if such payment is authorized he contends it should be subordinated to his claim pursuant to provisions of 11 U.S.C. § 510(c). The debtor and the debtor's spouse have appealed issues emanating from this Court and Herbert Weisberger has contended this represents dilatoriness on their part in order to delay a distribution so that the earnings of the estate would increase to benefit her tardy claim. The trustee in bankruptcy has not made any partial distribution of funds in his possession but has invested the assets as they have accumulated in interest-bearing investments. By the trustee having invested the proceeds, he has increased the fund for distribution so that the tardily filed claim of Mrs. Porter will receive payment if the claim is allowed and she will also receive interest on that claim unless subordinated to the claim of Herbert Weisberger. Had the trustee made a partial distribution of the original $48,000 and a partial distribution of the subsequent $55,000, Weisberger as the major creditor would have had the use of those funds from the moment of distribution and the tardily filed claim of Barbara E. Porter would likely have received little or no dividend. Herbert Weisberger objects on this ground primarily because it is the interest earned on the assets of the estate that will be used to pay the tardily filed claim as well as to pay the interest on all claims whether timely or not.

An issue raised by counsel for Herbert Weisberger in his brief in argument relates to the failure of Barbara E. Porter to return a diamond ring which this Court found to be a voluntary conveyance and voidable under 11 U.S.C. § 544(b). This Court is not privy to the settlement agreement between the parties which culminated in the dismissal of the appeal of the adversary proceeding between the trustee in bankruptcy and the Porters, and cannot presume that the trustee in bankruptcy accepted $55,000 in settlement of the entire litigation including the diamond ring, although that may have been the intent of the trustee. This Court finds that the Order entered by the United States District Court approving the compromise for the sum of $55,000 in cash did not state with specificity the resolution of the dispute as to the diamond ring. Rather, the Order only approved the proposed compromise as it had been presented by the trustee's motion to consider settlement of litigation, *i.e.*, as a cash payment in consideration for a quitclaim deed to the real estate. Consequently, this Court can make no findings of fact with respect to whether or not the diamond ring was to be included in the compromise and settlement of litigation, and therefore, whether or not Mrs. Porter is now required under this Court's Order of January 11, 1981 to turn over the ring to the trustee.

The claim filed by Mrs. Porter in these proceedings is a claim for contribution. This claim arises out of two Guarantee and Indemnity Agreements entered into by Herbert Weisberger, Gloria A. Weisberger, George D. Coffey, Jr., Pattie P. Coffey, Barbara E. Porter, and the debtor as co-sureties to indemnify St. Paul Title Insurance Company ("St. Paul") against any loss, damage, expense or dispersement of any kind whatsoever including, but not limited to, attorney's fees, court costs and expenses, or any outlay of monies relative to mechanic's liens or other obligations with respect to a certain piece of property which St. Paul had insured free of liens and encumbrances.

Herbert Weisberger and Barbara E. Porter have stipulated that mechanic's liens were filed against the insured property which caused St. Paul to make demand on its sureties under the foregoing indemnity agreements to defend St. Paul and reimburse St. Paul for any damage or expense incurred by it as a result of the defense of the mechanic's lien suits. The parties further stipulated that as a result of the failure of these individuals to respond to defend St. Paul under the indemnity agreements, St. Paul incurred liability expenses, attorney's fees and other costs in the amount of $60,067.45.

In or about the month of September, 1978, Herbert Weisberger, in consideration of a full and complete release, paid St. Paul

the sum of $17,184.70 to be applied to reduce the indebtedness owed to St. Paul. The parties have stipulated that the payment was made by Weisberger with the understanding that any portion of his payment in excess of his *pro rata* contribution share would be credited as a payment to St. Paul by Gloria A. Weisberger. Subsequently, negotiations between Barbara E. Porter and St. Paul resulted in a settlement of the remainder of the indebtedness to St. Paul by the payment of $30,000 to St. Paul from Mrs. Porter. Pursuant to Mrs. Porter's $30,000 payment and in consideration of Mr. Weisberger's previous payment of $17,184.70, St. Paul released and discharged all six of the co-sureties under the Guarantee and Indemnity Agreements. This release and settlement is dated July 21, 1982.

As a result of Mrs. Porter's payment of $30,000 to St. Paul, she now claims against the debtor's estate a right to contribution. Mrs. Porter's original proof of claim was for $30,000. An amended proof of claim was filed reducing her claim for contribution against the debtor to $15,000. Other than Mrs. Porter, only Herbert Weisberger had paid any portion of the common obligation arising out of the relation among the parties as co-sureties. Gloria A. Weisberger has been deemed to have made payment pursuant to the July 21, 1982 release and settlement between St. Paul and Barbara Porter, but only to the extent that Herbert Weisberger paid an amount in excess of his *pro rata* contribution share.[1] No payments by way of contribution have been made by Roscoe M. Porter, Jr., George D. Coffey, Jr., or Pattie P. Coffey.

## CONCLUSIONS OF LAW

The issues to be determined in this case are (1) whether the proof of claim as origi-

nally filed for $30,000 and the amended claim for $15,000 are timely filed and enforceable against the debtor's estate either in law or in equity; (2) whether Mrs. Porter's claim is barred by § 502(d) because Mrs. Porter did not turn over to the trustee the diamond ring which this Court previously found to be part of a voidable voluntary conveyance in a prior adversary proceeding; and (3) if Mrs. Porter has an allowable claim, whether it should be equitably subordinated to Weisberger's claim with respect to both the payment of the claim itself and interest.

*(1) Is Mrs. Porter entitled to a claim for contribution enforceable against the debtor's estate either at law or in equity, and if so, what is the correct amount of Mrs. Porter's claim?*

The parties do not dispute that Mrs. Porter's claim against the debtor's estate is based on contribution arising out of two Guarantee and Indemnity Agreements signed by a total of six co-sureties, including Mrs. Porter and the debtor. Weisberger maintains that contribution in Virginia may be recovered against a co-surety either at law or in equity. Weisberger asserts that Mrs. Porter's proof of claim in the amount of $30,000 and the amended proof of claim in the amount of $15,000 is not timely and in excess of the amount which Mrs. Porter is entitled under the contribution principles either at law or in equity under Virginia law. As a result, Weisberger requests that Mrs. Porter's claim be disallowed in the amount requested.

■ This Court must agree that Mrs. Porter's claim was not timely filed. The facts taken from the record indicate that notice was given to all creditors on March 19, 1982 that claims against the estate must be filed no later than six months after

[1]. The Release and Settlement Agreement dated July 21, 1982 provides in pertinent part that: "Subject only to written confirmation from Herbert Weisberger, [Mrs.] Porter hereby acknowledges and agrees that Herbert Weisberger has personally paid to St. Paul the sum of $17,-184.70 and that any excess of this amount over the amount, if any, Herbert Weisberger would have been otherwise required to pay as his pro rata contribution share shall be deemed to have been paid by Gloria A. Weisberger to St. Paul. [Mrs.] Porter further agrees to stipulate to and be bound by the aforesaid statement in any subsequent proceedings, if any, for contribution or otherwise, between Porter and any or all of George D. Coffey, Jr., Pattie P. Coffey, Roscoe M. Porter, Jr., Herbert Weisberger and Gloria A. Weisberger."

the date set for the first meeting of creditors scheduled for April 5, 1982. Mrs. Porter filed her proof of claim for $30,000 on October 24, 1984 which was more than two years after the expiration of the time period set out in the March 19, 1982 notice. There was no evidence presented at the hearing held on April 3, 1985 to contradict the record. Accordingly, the Court concludes as a matter of law that Mrs. Porter's claim was not timely filed. However, because the assets of the debtor's estate are of sufficient magnitude to accord dividends to tardily filed claims, Mrs. Porter's claim is not barred by its untimeliness and Mrs. Porter is entitled to participate in a distribution of assets by the trustee to the extent that the Court allows her claim in these proceedings.

The $60,000 debt of the six co-sureties to St. Paul was settled by the payment to St. Paul of $47,184.70. Mrs. Porter asserts that she paid $30,000 and Herbert Weisberger paid $17,184.70 to satisfy the common obligation between the co-sureties which sum exceeded her *pro rata* share and to which she is entitled to contribution from other co-sureties. This Court finds that pursuant to 11 U.S.C. § 502, claims for contribution are properly allowable as claims against the debtor's estate unless the Court is required to disallow the claim for contribution pursuant to § 502(e)(1). That subsection provides that the Court shall disallow any claim for contribution by a co-surety to the extent that (1) the assured creditors' claim against the estate is disallowed, (2) the claim for contribution is contingent, or (3) the co-surety asserts a right of subrogation to the rights of the assured creditor. The Court finds first, that the creditor's claim against the estate has not been disallowed, second, that Mrs. Porter has not asserted a right of subrogation, and third, that the claim for contribution is not contingent as of the time of allowance or disallowance of the claim. 11 U.S.C. § 502(e)(1)(A), (B), (C). With respect to whether or not a claim for contribution is contingent, the case law is well-settled in Virginia that a claim to contribution arises and becomes complete and enforceable upon the payment or discharge of the common obligation by one or more of several co-sureties in excess of their ratable portion of the claim. *Van Winckel v. Carter*, 198 Va. 550, 556, 95 S.E.2d 148, 152 (1956). In this case, St. Paul became liable for $60,067.45 to which each of the co-sureties had agreed to indemnify St. Paul. St. Paul agreed to release all six of the co-sureties upon the payment by Mrs. Porter of $30,000 after having previously received from Herbert Weisberger the amount of $17,184.70. Thus, upon complete settlement of the claim of St. Paul and the accompanying release by St. Paul, the right to contribution arose and became complete and enforceable to the extent that Mrs. Porter had paid more than her proportional share of the common burden. *Id.*

Having determined that a claim for contribution is allowable against the debtor's estate in bankruptcy, the Court must fix or estimate the amount of the allowable claim. 11 U.S.C. § 502(c). This task must be accomplished with reference to state law. With respect to the rights of co-sureties for contribution, the law is well-settled in Virginia that an action for contribution may be maintained either at law or in equity. *Cooper v. Greenberg*, 191 Va. 495, 61 S.E.2d 875 (1950). However, the amount recoverable in an action at law differs from that recoverable in an action in equity. An action for contribution at law proceeds on a theory of implied contract which does not take into account subsequent insolvencies of co-sureties. In contrast, an action for contribution in equity proceeds on the equitable maxim that equality is equity and, thus, on the subsequent insolvency of one or more of the co-sureties, those insolvent obligors are not counted in allocating each co-sureties' just proportion of the common obligation. *Id.* at 501–03, 61 S.E.2d at 878–79. In this case certain facts relative to the solvency or insolvency of the other co-sureties are not before the Court at this time and for reasons which will become apparent, the amount of the allowable claim of Mrs. Porter must be estimated.

The purpose of allowing the estimation of claims is to avoid undue delay in the administration of the case. To accurately determine the amount of the claim of Mrs. Porter for contribution would necessitate a determination by this Court or the Virginia state courts of the solvency or insolvency of the five remaining co-obligors excluding the claimant, Mrs. Porter. Estimation of the claim is proper because to wait for a determination by the Virginia state courts might unnecessarily delay the administration of a case which has already been marked by delay. Moreover, this Court was not presented with sufficient evidence at the hearing to make its own individual determination of solvency or insolvency with respect to each co-surety nor were several of the co-sureties before the Court. With respect to contribution actions in equity in Virginia, it is not sufficient to merely allege insolvency, the matter must be proven by the evidence. *See Cooper*, 191 Va. at 501, 61 S.E.2d at 878; *Robertson v. Triggs Adm'r*, 73 Va. (32 Gratt.) 76, 79, 80 (1879). As a result this Court will for purposes of estimating Mrs. Porter's claim find that Herbert Weisberger, Gloria A. Weisberger, and Pattie P. Coffey are solvent in the absence of any evidence to the contrary.

Additionally, the Court finds from the record with respect to Roscoe M. Porter, Jr., that the bankruptcy estate of the debtor is solvent and is able to contribute to the common obligation. With respect to George D. Coffey, Jr., the Court can take judicial notice that George Coffey filed a Chapter 7 petition in this Court subsequent to entering into the indemnity agreements with St. Paul. Filing a petition in bankruptcy is certainly evidence of insolvency, although it may not be conclusive. Thus, for purposes of estimating Mrs. Porter's claim for contribution, this Court finds Mr. Coffey to be insolvent. This Court having previously found Herbert and Gloria A. Weisberger and Pattie P. Coffey to be solvent for purposes of estimating Mrs. Porter's claim, it remains for this Court to determine the correct *pro rata*

portion of the common obligation owed by each co-surety.

Weisberger maintains that he and his wife have paid their *pro rata* portion of the $47,184.70 debt by the payment of $17,184.70, and that as a result of the insolvency of George D. Coffey, Jr., Mrs. Porter may only seek contribution against Mrs. Coffey and the debtor's estate. Inasmuch as Mrs. Porter paid $30,000 of the common obligation, Weisberger maintains that Mrs. Porter's allowable claim cannot exceed $10,000 as the one-third portion between the three remaining solvent sureties after excluding himself and Gloria A. Weisberger. In contrast, Mrs. Porter asserts that she has filed suit against Mrs. Coffey in Virginia state court for contribution and that the possibility exists that Mrs. Coffey will also be insolvent. Therefore, Mrs. Porter seeks one-half of the $30,000 she paid in satisfaction of the common obligation against the debtor's estate as the only remaining solvent surety on the common obligation, again excluding Herbert and Gloria A. Weisberger from the calculations.

This Court must conclude that the positions of Weisberger and Mrs. Porter are both unsatisfactory and not in accord with the well-settled dictates of Virginia law. Both parties have excluded Herbert Weisberger and Gloria Weisberger from the calculations. This is in error. All of the sureties on a common obligation are to be counted for purposes of contribution in equity unless insolvent or outside of the court's jurisdiction. *Cooper v. Greenberg*, 191 Va. 495, 501, 61 S.E.2d 875, 878 (1950). At law, all of the co-sureties are counted irrespective of insolvency. However, for purposes of estimating this claim, this Court has determined that the George Coffey estate is insolvent and because this would eliminate one of the contributors to the common obligation, this Court finds that the remedy at law is inadequate and that this Court should invoke its equitable jurisdiction to determine the amount of Mrs. Porter's claim. *Id.* at 502, 61 S.E.2d at 879. Accordingly, the estate of George D. Coffey, Jr. is not to be considered in

allocating the ratable portion of the common obligation for purposes of contribution.

■ The insolvency of the George D. Coffey, Jr. estate leaves five sureties who are equally obligated to pay their fair portion of the $47,184.70. Therefore, each of the five remaining solvent sureties should in equity pay one-fifth of the total amount or $9,436.94 towards satisfaction of the common debt. The Court finds that Mr. Weisberger has paid $17,184.70 with an agreement with respect to Mrs. Porter that any excess paid over and above that found to be Mr. Weisberger's ratable portion of the claim would be deemed to have been paid by Mrs. Weisberger on her ratable portion of the common obligation. This Court does not read the agreement to be a release of Herbert and Gloria A. Weisberger to the extent that one or both may not have paid their ratable portion of the claim. As a result, Mrs. Weisberger may well be liable for $1,689.18 as the remainder of her equitable share by way of contribution which she has not paid. Mrs. Coffey would be liable for $9,436.94.

However, because neither Mrs. Weisberger nor Mrs. Coffey are before this Court as parties to this proceeding, it would be improper for this Court to make a determination with respect to their liabilities without their participation or any evidence of their solvency or insolvency. Without such a determination, this Court may only estimate the amount of the allowed claim which Mrs. Porter may properly file against the debtor's estate. This amount shall not exceed $9,436.94.

*(2) Is Mrs. Porter's claim for contribution barred by the provisions of § 502(d) for her failure to turn over a certain ring which this Court had previously held was a voidable voluntary conveyance?*

Weisberger maintains that Mrs. Porter and the debtor have been held by this Court to have participated in a fraudulent conveyance of real estate and personal property with the intent to hinder and delay the collection efforts of Weisberger against the debtor. Weisberger further maintains that the order directing the turnover of the ring to the trustee and Mrs. Porter's failure to do so gives this Court cause to disallow her claim pursuant to § 502(d). Section 502(d) provides as follows:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, 553 of this title.

11 U.S.C. § 502(d). Mrs. Porter contends that with respect to the ring, the Court did not find there to be a fraudulent conveyance.

The Court finds that Mrs. Porter has correctly stated the facts. In its Memorandum Opinion dated January 11, 1984, this Court found that the gift by the debtor to Mrs. Porter of a diamond ring was avoidable by the trustee under § 544(b) as a voluntary conveyance under Virginia state law. *Va. Code* § 55–81 (Repl.Vol.1981). With respect to the transfer of certain real estate, this Court found there to have been a fraudulent conveyance. This Court did not find any fraud or other inequitable conduct with respect to the transfer of the diamond ring. Accordingly, there was no finding as Weisberger maintains that the transfer of the diamond ring was with the intent to hinder and delay the collection efforts of Weisberger against the debtor.

Although this Court as part of its Order dated January 26, 1984 voided the voluntary conveyance of the ring and found it to be an asset of the debtor's estate, the entire matter was subsequently appealed to the District Court for the Eastern District of Virginia at which time a compromise was entered into and approved by the District Court. The terms of that compromise were that the debtor would pay to the

trustee the sum of $55,000 in cash on or before September 25, 1984 in consideration for the trustee's execution and delivery of a quitclaim deed to the real property which is the subject of the action. No specific mention was made of the diamond ring in the proposed compromise or the District Court's Order of June 25, 1984 approving the compromise. The District Court's approval of the compromise appeared to settle all issues in the case and the appeal was dismissed.

To this Court's knowledge based on the record and evidence before it, no demand for return of the diamond ring has ever been made by the trustee. It is this Court's opinion that the diamond ring could well have been a part of the compromise of the entire controversy, and that as a result of the settlement of the litigation, Mrs. Porter was entitled to keep the diamond ring. This result would accord with what this Court understands to have been the intent of the parties in entering into the settlement which was approved by the District Court on June 25, 1984. It would indeed be penny-wise and pound foolish for Mrs. Porter not to deliver up an item to which she may have no right to possession and at the same time risk a disallowance of her proof of claim under § 502(d).

If the diamond ring was part of the compromise, it may well be that § 502(d) is inapplicable to this case in that Mrs. Porter, as transferee, was no longer obligated under applicable bankruptcy law to turn over the property to the trustee. On the other hand, if the ring was not part of the compromise, the trustee was entitled to proceed to recover the diamond ring from Mrs. Porter. However, until that issue is resolved by a clarification of the June 25, 1984 Order of the District Court, it would be inappropriate for this Court to apply § 502(d) to disallow Mrs. Porter's claim for contribution. The Court will therefore reserve judgment on this issue and will make no determination with respect thereto unless and until future clarification of the District Court Order is forthcoming. However, because Weisberger has not established by the evidence in this proceeding that the diamond ring was not part of the settlement and compromise or that Mrs. Porter remains obligated to turn over the ring to the trustee, his argument for application of § 502(d) must necessarily fail at this juncture. Therefore, this portion of Weisberger's objection to Mrs. Porter's proof of claim should at present be overruled.

*(3) Should Mrs. Porter's claim for contribution be equitably subordinated to Weisberger's proof of claim pursuant to 11 U.S.C. § 510(c)(1)?*

Weisberger contends with respect to this issue that as a result of Mrs. Porter's participation in the fraudulent conveyance of real and personal property of the debtor with the intent to hinder and delay the collection efforts of Weisberger, her claim for contribution should be equitably subordinated to the proof of claim filed by Weisberger. However, as Mrs. Porter correctly pointed out and this Court has found, the transfer of the diamond ring from the debtor to Mrs. Porter was voidable only as a voluntary conveyance and not as a fraudulent conveyance. As previously stated, the Court in its Memorandum Opinion dated January 11, 1984 did not find any fraud or other inequitable conduct with respect to the transfer of the diamond ring. However, Weisberger is correct in his assertion that a fraudulent transfer was found with respect to the transfer of certain real estate in which Mrs. Porter was one of the grantees. Thus, if any inequity exists which would warrant subordinating Mrs. Porter's claim to Weisberger's claim, it would be found in that part of the Court's Opinion and Order entered January 11, 1984 relating to the fraudulent conveyance of the subject real property.

Section 510(c)(1) provides in pertinent part that the Court after notice and a hearing may:

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or

all or part of an allowed interest to all or part of another allowed interest.

11 U.S.C. § 510(c)(1). Weisberger cites the case of *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) and subsequent cases for the proposition that this Court's finding of a fraudulent conveyance with respect to certain real property gives this Court cause to equitably subordinate Mrs. Porter's claim for contribution to the claim of Weisberger. However, it has been held that the doctrine of equitable subordination should not be applied in any case if the purpose is not to achieve equity but rather to punish a party for his or her past conduct. *See In re Westgate-California Corporation,* 642 F.2d 1174, 1178 (9th Cir. 1981). Subordination is an equitable remedy, and will not be applied where the result would be to do injustice.

▮▮▮▮▮▮ In this case, the Court found in the prior adversary proceeding that there had been a fraudulent conveyance with respect to the realty and a voluntary conveyance of the diamond ring. This Court's decision was appealed to the District Court. While on appeal the parties entered into a compromise and settlement of the litigation in which the debtor and Mrs. Porter agreed to pay $55,000 to the trustee in bankruptcy in return for a quitclaim deed to the real estate. The District Court approved the compromise and dismissed the appeal. Although there is doubt surrounding whether the diamond ring was a part of this settlement, in this Court's opinion the payment to the trustee of $55,000 in settlement of all claims arising out of the litigation with respect to the real estate purged the debtor and Mrs. Porter of the inequitable conduct which occurred as a result of the fraudu-

lent conveyance of the real estate. Moreover, as noted earlier, this Court did not make a finding in its previous Opinion and Order that Mrs. Porter had engaged in fraud or other inequitable conduct relative to the transfer of the diamond ring between she and her husband. Accordingly, this Court will not punish Mrs. Porter by subordinating her claim to that of Weisberger when she has purged herself of any inequity which existed with respect to the fraudulent conveyance of the real estate and no inequity was found with respect to the diamond ring. As a result, that portion of Weisberger's objection relating to subordination should be overruled.[2]

Although the Court must deny Weisberger's attempt to subordinate Mrs. Porter's claim under § 510(c)(1), the Bankruptcy Code in and of itself subordinates Mrs. Porter's claim because it was tardily filed. In Chapter 7 cases, property of the estate is distributed in accordance with 11 U.S.C. § 726. Absent any valid objection to a claim pursuant to 11 U.S.C. § 502 and absent any reason for equitable subordination under 11 U.S.C. § 510, certain timely filed unsecured claims are to be paid in full without interest prior to the payment of any tardily filed claims. 11 U.S.C. § 726(a)(2), (3). After the payment of timely filed claims, claims tardily filed that are filed prior to distribution are to be paid out of the remaining assets of the estate. Should there be any monies remaining after payment of all claims in the orders of priority as established by § 726(a)(1)–(4), the payment of interest is provided for by § 726(a)(5) on all claims whether timely or tardily filed. Under these conditions, Herbert Weisberger, and all other timely filed claims, if any, would be paid in full. 11

---

**2.** Herbert Weisberger has also argued that equitable subordination is proper in this case because of the non-distribution of assets from the debtor's estate allegedly caused by the Porters in appealing decisions of this Court for the ostensible purpose of delaying a distribution to creditors in order to benefit Mrs. Porter's tardily filed claim. The assets of the estate over time have appreciated to the point where the estate is able to pay dividends to all timely and tardily filed claims as well as some portion of the interest due on these claims. Had partial distri-

bution of the assets been made at an earlier date, the current favorable situation for Mrs. Porter may not have occurred. However, this Court cannot make a finding that the debtor's right to appeal decisions of this Court is an inexcusable or unjustifiable delay on the part of the debtor or Mrs. Porter which would warrant this Court in subordinating her principal claim or her claim for interest to the claim of Herbert Weisberger to any greater extent than that provided by 11 U.S.C. § 726.

U.S.C. § 726(a)(2). Barbara E. Porter, with her tardily filed claim, would then be paid to the extent that assets remained in the estate to pay any tardily filed claims. 11 U.S.C. § 726(a)(3). Thereafter, and prior to refunding to the debtor any residue of the estate under § 726(a)(6), all claims whether timely or tardily filed will be paid at an interest rate established by the Court which would be determined by the judgment rate of interest currently prevailing. 11 U.S.C. § 726(a)(5).

After the payment of administrative expenses accorded priority under § 507 and in accordance with the foregoing, Herberger Weisberger's claim of $102,685.13 together with all other timely filed claims, if any, will be paid first, followed by Mrs. Porter's tardily filed claim assuming any funds remain to be distributed. In the event there are sufficient funds after the payment of all timely filed and tardily filed claims, § 726(a)(5) provides for the payment of interest concurrently on all claims, whether timely or not, and should there be any funds remaining after the payment of interest at the legal rate from the date of filing the petition, the remainder shall go to the debtor, Roscoe M. Porter.

In summary, under the laws of the Commonwealth of Virginia, Mrs. Porter is entitled to contribution from the debtor in the amount of $9,436.94 which this Court estimates to be the proper allowable claim without further evidence of the solvency or insolvency of any other co-surety. The Court further finds that Mrs. Porter's claim for contribution should not be disallowed pursuant to § 502(d) inasmuch as she may be entitled to keep the ring as a result of a compromise and settlement entered into by all the parties and approved by the District Court on June 25, 1984. Finally, the Court finds that § 726 of the Bankruptcy Code provides for the orderly distribution of property of the estate and this Court will not equitably subordinate Mrs. Porter's claim or the interest on her claim to the allowed claim of Weisberger under circumstances such as these where the inequitable conduct in which she may have been engaged has been purged by

settlement of that cause of action. Accordingly, Weisberger's objection to the allowance of the proof of claim filed by Barbara E. Porter should be denied in conformity with this Opinion.

An appropriate Order will issue.