NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0669n.06
No. 20-5231

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | FILED<br>Nov 20, 2020<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JACQUELINE MARSHALL KEY, et al., | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE:    ROGERS, NALBANDIAN, and MURPHY, Circuit Judges.

ROGERS, Circuit Judge.  The Government obtained a statutory lien on all property owned by Jacqueline and Teska Key to satisfy a $350,000 criminal restitution judgment, following their conviction on charges of transporting stolen goods in interstate commerce.  Over a year earlier, but two months after a search warrant was executed to search the Keys' house for evidence of stolen goods, Jacqueline Key conveyed a parcel of property by quitclaim deed to her son, Johnny Marshall III, for one dollar.  The Government alleged that this transfer was fraudulent under the Federal Debt Collection Procedures Act, the district court granted summary judgment in favor of the Government, and the Keys appeal.  Because there is no genuine issue of material fact as to whether that the property transfer was fraudulent, the district court properly granted summary judgment for the Government.

From September 2013 to July 2015, Jacqueline and Teska Key unlawfully transported stolen goods, wares, and merchandise in interstate commerce in violation of 18 U.S.C. § 2314.  A

federal grand jury returned an indictment on July 21, 2016, charging Jacqueline and Teska each with one count of aiding and abetting the interstate transportation of stolen goods. The Keys pled guilty to the charges against them in October and December 2016. In April of 2017, Teska and Jacqueline were sentenced to 47 and 30 months' imprisonment, respectively. The Keys were also sentenced to pay $354,343.86 in joint and several restitution debt. After the separate final judgments were entered, the Government obtained statutory liens under 18 U.S.C. § 3613(c) on all property and rights to property belonging to the Keys.

Earlier, on August 6, 2015, United States Postal Inspectors had executed a warrant to search Teska's house for evidence of stolen goods. Approximately two months after that search, on October 12, 2015, Jacqueline conveyed by quitclaim deed a property located on Sardis Street in Memphis to her son, Johnny Marshall III, for the sum of one dollar.

About three months after their sentencing, in October of 2017, the United States sued the Keys and Marshall under the Federal Debt Collection Procedures Act ("FDCPA"), alleging that the Sardis property was fraudulently transferred in violation of 28 U.S.C. § 3304. The Government argued that the fraudulent transfer was made with the intent to defraud the Government and hinder collection of the restitution debt owed by the Keys.

Following discovery, the United States moved for summary judgment, asking the district court to declare the Sardis property transfer fraudulent and void. Defendants filed a memorandum in opposition, along with a one-page affidavit from Marshall, stating that his plans to take over the Sardis property predated his mother's criminal activity and that he had no intent to defraud any creditors by accepting the property.

The district court ruled for the Government, concluding that Jacqueline transferred her interest in the Sardis property "with actual intent to hinder, delay, or defraud a creditor" in violation

of 28 U.S.C. § 3304(b)(1)(A). The court applied the "badges of fraud" enumerated in § 3304(b)(2), a non-exhaustive list of eleven factors that courts may consider as indicia of fraudulent intent.[1] Of the eleven factors, the district court found that five applied to the Sardis property transfer: (1) the transfer was made to Jacqueline's son, who was clearly an insider; (2) the transfer occurred shortly after Jacqueline learned that she was threatened by criminal indictment based on the U.S. Postal Inspectors' search of the Keys' home; (3) Jacqueline did not receive reasonably equivalent value in return for the transfer because Marshall only gave her one dollar in consideration of the property; (4) Jacqueline was insolvent; and (5) the transfer occurred shortly before Jacqueline incurred a substantial restitution debt from the filing of the criminal indictment. The court concluded that on the basis of those five factors, the transfer of the Sardis property was fraudulent and void. The Keys and Marshall appeal.

§ 3304 provides that where a debt arises after a transfer of property is made, the Government can prove that the transfer was fraudulent by demonstrating that the debtor had "actual intent to hinder, delay, or defraud a creditor." *Id.* § 3304(b)(1)(A). The Government successfully established five factors under § 3304, which support the conclusion that Jacqueline fraudulently

---

[1] The badges of fraud in 28 U.S.C. § 3304(b)(2) are as follows:

    (A) the transfer or obligation was to an insider;
    (B) the debtor retained possession or control of the property transferred after the transfer;
    (C) the transfer or obligation was disclosed or concealed;
    (D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
    (E) the transfer was of substantially all the debtor's assets;
    (F) the debtor absconded;
    (G) the debtor removed or concealed assets;
    (H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
    (I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
    (J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
    (K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

transferred the Sardis property in order to hinder the Government from collecting on its restitution debt. Because there is no genuine issue of material fact as to Jacqueline's actual fraudulent intent motivating the transfer, summary judgment in favor of the Government was appropriate.

First, defendants do not dispute on appeal that the transfer was made to an insider. *Id.* § 3304(b)(2)(A). As Jacqueline's son, Marshall was an insider. The FDCPA defines an "insider" under the FDCPA as a "relative of the debtor." *See id.* § 3301(5)(A)(i).

Defendants also do not dispute the fact that Jacqueline was threatened with suit before the transfer was made. *Id.* § 3304(b)(2)(D). Jacqueline knew or reasonably should have known that she would face criminal prosecution for her crime after her house was searched. On August 6, 2015, United States Postal Inspectors executed a search warrant on Teska's home, where Jacqueline lived, as part of an investigation into the crime to which Jacqueline ultimately pled guilty. Two months after the search, Jacqueline conveyed the Sardis property to Marshall. This badge of fraud applies where the defendant commits a crime and is aware of a pending criminal investigation into her conduct before she makes a transfer. *See United States v. Osborne*, 807 F. App'x 511, 514, 523 (6th Cir. 2020); *see also United States v. Sherrill*, 626 F. Supp. 2d 1267, 1274 (M.D. Ga. 2009). In *Osborne*, the defendant was interviewed by the FBI twice in connection with a mortgage fraud scheme. 807 F. App'x at 514. Several months after the second interview, the defendant transferred substantial assets to her spouse via a divorce decree. *Id.* We affirmed the district court's conclusion that on the basis of these facts, there was a threat of criminal suit based on the FBI's investigation prior to the transfer of the defendant's assets, and therefore this badge of fraud applied to the transfer. *Id.* at 523. Here, once the search occurred, Jacqueline knew, or reasonably should have known, that she would be prosecuted and forced to pay restitution for the

stolen goods she transported and sold. Thus, this factor supports the finding that Jacqueline acted with fraudulent intent.

Additionally, the Government successfully established that the value of the consideration Jacqueline received was not reasonably equivalent to the value of the transferred property. 28 U.S.C. § 3304(b)(2)(H). This factor strongly supports the conclusion that Jacqueline acted with fraudulent intent, because she conveyed the Sardis property to her son for only one dollar and there is no evidence that Marshall paid any value at the time of the transfer. Reasonably equivalent consideration under the FDCPA requires that "the debtor has received value that is substantially comparable to the worth of the transferred property." *United States v. Loftis*, 607 F.3d 173, 177 (5th Cir. 2010) (quoting *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 548 (1994) (interpreting the same term in the Bankruptcy Code)). Although there is some dispute in the record as to the value of the property, for the purposes of summary judgment we draw all inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Based on Marshall's subjective valuation of $28,000, to demonstrate an absence of fraud Marshall had to present evidence showing that he gave value "reasonably equivalent" to the $28,000 that the Sardis property was allegedly worth.

One dollar and a vague promise to help pay the expenses of the Sardis property obviously did not constitute value "reasonably equivalent" to $28,000. On appeal, defendants argue that Jacqueline did receive reasonably equivalent value because Marshall promised to pay taxes on the Sardis property in exchange for the transfer. But defendants failed to present this argument below. Marshall's affidavit, submitted in response to the Government's summary judgment motion, simply states that he received the property in order to get "a good start in life" and to help Jacqueline "with the maintenance and expenses of the property." The district court, noting

Marshall's deposition testimony that he had promised to pay taxes on the Sardis property, analyzed whether that promise, along with any actual payments made towards the property taxes, constituted reasonably equivalent value under the FDCPA. The court correctly concluded that Marshall's promise did not constitute value under the FDCPA because there is no evidence that he actually paid any taxes when the transfer was made. Payment of antecedent debt (such as back-taxes) can qualify as value under the FDCPA. *See* 28 U.S.C. § 3303(a).

In determining whether the transferor received "reasonably equivalent value," the "critical time is when the transfer is made." *Osborne*, 807 F. App'x at 520-21 (quoting *In re Chomakos*, 69 F.3d 769, 770-71 (6th Cir. 1995) (internal quotation marks omitted) (citation omitted)). Marshall needed to prove that he actually paid the back-taxes at the time of the transfer in order to demonstrate that there was an exchange of "reasonably equivalent" value. Simply promising to pay taxes is insufficient, because an "unperformed promise" does not constitute "value" under the FDCPA. *See* 28 U.S.C. § 3303(a). The Government submitted evidence showing that city taxes on the Sardis property totaled nearly $9,000 from 2010 to 2015. But defendants offered no evidence detailing what amount of taxes were owed at the time of the transfer or what amount, if any, was paid by Marshall at that time. The amount of county taxes due or paid at the time of the transfer is also unknown. Marshall claimed during his deposition that he paid some taxes on the property but admitted that he still owed an outstanding amount of $13,000 as of December 2018. Therefore, defendants failed to show that Jacqueline received reasonably equivalent value for the Sardis property at the time of the transfer. Marshall's promise to pay back-taxes on the property is not adequate to dispel this badge of fraud because there is no evidence that he actually performed on that promise when the transfer was made. Thus, this factor supports the conclusion that

Jacqueline acted with actual fraudulent intent in transferring the property, and defendants failed to raise a genuine issue of material fact with respect to this determination.

Moreover, defendants also do not dispute on appeal that Jacqueline was insolvent at the time of the transfer. 28 U.S.C. § 3304(b)(2)(I). Pursuant to § 3302 of the FDCPA, a debtor becomes insolvent when "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 28 U.S.C. § 3302(a). In 2010, Jacqueline filed for bankruptcy. Filing a bankruptcy petition is generally evidence of insolvency. *See In re Porter*, 50 B.R. 510, 517 (E.D. Va. 1985). Marshall even admitted in his deposition that Jacqueline was still insolvent at the time of this suit. Jacqueline transferred the Sardis property to her son for one dollar, despite having no job and owing more in debt than the value of all her assets. Thus, this badge of fraud also supports the conclusion that Jacqueline acted with fraudulent intent to hinder the Government from collecting on its restitution debt.

Finally, the Government successfully established that the Sardis transfer was made shortly before Jacqueline incurred a substantial debt. 28 U.S.C. § 3304(b)(2)(J). Once she learned of the Government's criminal investigation, Jacqueline knew, or reasonably should have known, that she would eventually face a criminal indictment. The transfer occurred in October 2015 and Jacqueline was indicted in July 2016. Under the FDCPA, Jacqueline incurred the debt at the time of the indictment because the Government became a creditor when it acquired "a right to payment" regardless of the fact that the right was not reduced to judgment at the time of the transfer. 28 U.S.C. § 3301(3)–(4) (defining "claim" and "creditor"). Thus, nine months separated the transfer from the date Key incurred the debt.

With respect to this badge of fraud, defendants argue on appeal that a "lengthy period of time" passed between the transfer and when the debt was incurred, so the badge does not apply.

This argument is without merit. The search of Teska's home put Jacqueline on notice that the Government was pursuing an investigation into their criminal activities and that she would likely face criminal charges for her conduct. *See Sherrill*, 626 F. Supp. 2d at 1274. In *Sherrill*, the court held that this badge of fraud applied when there was an eight-month gap between the transfer of property and indictment, because at the time of the transfer the defendant "knew that SEC investigators were on his trail" and he "would have known that once they fully discovered his SEC violations, they were likely to pursue an action against him to seek return of these customers' funds." *Id.* The transfer here occurred two months after the house where Jacqueline lived was searched by U.S. Postal Inspectors. As a result, Jacqueline knew, or reasonably should have known, that she was the subject of a criminal investigation and would face charges for the value of the stolen goods. Accordingly, this badge of fraud also supports the determination that the Sardis property was transferred with fraudulent intent.

The district court properly relied upon these five factors to deem the Sardis transfer fraudulent and void under the FDCPA. *See* 28 U.S.C. § 3304(b)(2)(A)–(K) and n.1, *supra*. The FDCPA allows the United States to enforce a restitution order by preventing a fraudulent transfer of property by a debtor. "Because proof of actual intent to hinder, delay or defraud may rarely be established by direct evidence, courts infer fraudulent intent from the circumstances surrounding the transfer." *Schilling v. Heavrin* (*In re Triple S Rest., Inc.*), 422 F. 3d 405, 416 (6th Cir. 2005) (quoting *Zentek GBV Fund IV, LLC v. Vesper*, 19 F. App'x 238, 243 (6th Cir. 2001)). As we recently noted, "[a]lthough badges of fraud are not conclusive, 'a concurrence of several badges will always make out a strong case.'" *Osborne*, 807 F. App'x at 524 (quoting *United States v. Leggett*, 292 F.2d 423, 427 (6th Cir. 1961)). In *Leggett*, six badges of fraud were sufficient to make out a strong case for fraud. 292 F.2d at 427. In *Osborne*, we held that five badges were

sufficient to demonstrate fraud and justify summary judgment in favor of the Government. *See* 807 F. App'x. at 523-24. Here, the district court's conclusion that five badges of fraud apply is sufficient to show that Jacqueline acted with actual fraudulent intent. Defendants failed to present evidence demonstrating a genuine issue of material fact as to whether the five badges of fraud apply to the Sardis transfer.

Defendants' primary argument in this appeal is that summary judgment was inappropriate because whether they had "intent to defraud" is an issue that must be determined by a trier of fact. This argument is without merit on the facts of this case. Indeed, we have upheld summary judgment as appropriate, albeit in an unpublished opinion, where the defendants failed to refute multiple badges of fraud established by the Government. *See Osborne*, 807 F. App'x at 523-24. Marshall's affidavit claiming that he had no intent to defraud any creditors when accepting the Sardis property is insufficient to overcome the numerous badges of fraud established by the Government. Even taking as true Marshall's self-serving statement that he lacked any fraudulent intent, that evidence only addresses the transferee's intent, not the debtor's intent. *See* 28 U.S.C. § 3304(b)(1)(A). The evidence overwhelmingly favors the Government's position that Jacqueline intended to defraud the Government by transferring the Sardis property.

Defendants' other arguments on appeal are also unconvincing. There was no need for a separate hearing because defendants had the benefit of discovery and the opportunity to develop the record with evidence refuting the badges of fraud. This includes obtaining testimony from Jacqueline while she was in prison. There is no reason why Jacqueline's presence was necessary to decide the motion for summary judgment. The analysis of the badges of fraud did not turn on the witnesses' credibility, but rather on the factual circumstances surrounding the Sardis transfer. Additionally, the Government extensively argued the badges of fraud in its memorandum in

support of its motion for summary judgment, so defendants are incorrect that the badges were only established when the district court entered judgment in favor of the Government.

Finally, the defendants raise two Eighth Amendment claims in their list of issues presented on appeal, but support them solely with the ipse dixit that "[t]he fine is excessive as to Jacqueline Key and cruel and unusual as to Johnny Marshall, III, an innocent owner." We can deal with these "arguments" in kind: there was no colorable Eighth Amendment violation in this case.

For these reasons, the judgment of the district court is affirmed.