ELLEN COAKLEY, administratrix, *vs.* BOSTON AND MAINE RAILROAD.

MATTHEW McGRATH, administrator, *vs.* SAME.

Suffolk.    January 13, 1893. — April 17, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Highway by Prescription or Dedication — Discontinuance — Warrant and Vote of Town — Proviso — Highway, Town Way, or travelled Place.*

A road was laid as a town way in 1731, and the part in which the crossing was situated, at which an accident occurred, was yet such a way, unless discon-

tinued in 1872. In November of that year the town voted that from the time when a new road, laid out and accepted by the town that day, designed to accommodate better the travel which passed over the S. H. Road, so called, should be opened for public use, the S. H. Road between its divergence from the main road near the house of J. and the point where it entered upon and connected with the new road should be discontinued as a public road, provided that the abutting owners on the road thus discontinued should have the right to improve the same as a private way for their especial use. The new road was opened in 1875, or before. No repairs had been made by the town on the S. H. Road for many years, and in 1880 signs stating that it was "not a public way" were placed at points between which the vote ordered that it should be discontinued, but it had been left open, connecting at either end with public roads, and it had been in continuous use since a time long prior to 1872. It did not appear when the railroad was constructed, but the crossing was planked between the rails, and over it were the usual signs. No evidence was offered to show when the crossing was planked or the signs were erected. *Held,* that the road was one which the town had the power to discontinue, and that, whatever the nature or amount of travel over it after the vote of discontinuance, it could not have been a highway by prescription, as the accident which caused the death of the plaintiffs' intestates was less than twenty years after the passage of the vote; that it was not necessary to the legal discontinuance, in addition to the vote or adjudication, that there should be an actual shutting up of the road or an exclusion of travel; that the fact that the vote was to discontinue from and after the time when the new road laid out on the same day should be opened for use, did not make the discontinuance void; that the vote was valid notwithstanding the proviso; and that the road at the time of the accident was not a town way, highway, or travelled place within the meaning of Pub. Sts. c. 112, § 163.

A road is not a travelled place within the meaning of Pub. Sts. c. 112, §§ 163-165, unless the railroad corporation has been requested in writing by the selectmen, or required by the county commissioners, to erect and maintain boards at the crossing, and, in the absence of direct proof of such request or direction, the fact that the crossing is planked and that signs are erected over it has no tendency to show that any request or order under the statute has been made.

TWO ACTIONS OF TORT, brought under the provisions of Pub. Sts. c. 112, § 213, for causing the death of the plaintiffs' intestates on February 22, 1891, by an accident at a grade crossing in Wayland, claimed by the plaintiffs to be a highway, town way, or travelled place, within the meaning of § 163 of said chapter. Trial in the Superior Court, before *Hopkins,* J., who upon the conclusion of the evidence directed a verdict for the defendant in each case, and the plaintiffs alleged exceptions. The facts appear in the opinion.

*A. H. Russell,* for the plaintiffs.

*S. Lincoln,* for the defendant.

BARKER, J. The plaintiffs contend that, as the road had been in use by the public for many years, it would have been com-

petent for the jury to find that it was a highway by prescription or by dedication. But the bill of exceptions discloses no conflict of evidence upon the status of the road. Upon uncontradicted evidence it appeared that the road was laid out as a town way in the year 1731, and that the part of it in which the crossing is situated is yet such a way, unless it was discontinued in the year 1872. The town records show an article in a warrant for a meeting held on November 30, 1872, " To see if the town will order a discontinuance for public travel of so much of the Sand Hill Road, so called, as lies between its point of divergence from the main road near the house of J. N. Morse and the point where the new road shall connect with the same, the said discontinuance to take effect from and after the time when said new road shall be opened for public travel, or to do or act in any manner relative thereto "; and a vote, " To adopt a motion in writing by J. S. Draper, as follows : ' Whereas a new road has been laid out and accepted by the town this day, designed to accommodate better the travel that now passes over the Sand Hill Road, so called; therefore, voted, and ordered hereby, that from and after the time when said new road shall be opened for public use, the Sand Hill Road between its divergence from the main road near the house of J. N. Morse and the point where said road enters upon and connects therewith [that is, with the new road] shall be discontinued as a public road; provided, however, that the abutting owners on the road thus discontinued shall have the right to improve the same as a private way for their especial use.' "

The new road was opened in the year 1875, or before. No repairs have been made by the town on the Sand Hill Road for many years, and in the year 1880 signs stating that it was " Not a public way," were placed at points between which the vote ordered that it should be discontinued ; but it has been left open and unobstructed, connecting at either end with public roads, and it has been in continuous use since a time long prior to the year 1872. It does not appear when the railroad was constructed, but the crossing is planked between the rails, and over it are the usual signs. No evidence was offered to show when the crossing was planked or the signs were erected.

The objections urged against the validity of the attempted

discontinuance are that the road was not a town way but a county or highway; that a vote and record do not work a discontinuance unless the road is actually closed to travel; that the discontinuance was not to take effect until an indefinite future time; and that it was upon condition.

The contention that upon the evidence the road might have been found to be a highway by prescription or otherwise, as distinguished from a town way, so that the town had no power to discontinue it, is unsound. If the mere use of a private way, without proof that the use is adverse to the owner of the soil, is evidence from which to find a highway by prescription, (see *Johanson* v. *Boston & Maine Railroad*, 153 Mass. 57,) the same principle does not apply to town ways. All the public have the right to use town ways at their pleasure; and the exercise of this right cannot change the nature of the way, or withdraw it from the jurisdiction of the town. *Webster* v. *Lowell*, 142 Mass. 324, 341. *Bigelow* v. *Hillman*, 37 Maine, 52. *Larry* v. *Lunt*, 37 Maine, 69. *Pillsbury* v. *Brown*, 82 Maine, 450. Even a defective location by the town rebuts any presumption of dedication or of location as a county way; *Avery* v. *Stewart*, 1 Cush. 496; and discontinuance by the town is proof that the way was laid out by the town. *Brownell* v. *Palmer*, 22 Conn. 107, 117. We therefore regard the road as one which the town had the power to discontinue; and whatever the nature or amount of travel over it after the vote of discontinuance, it could not have been a highway by prescription, as the accident was less than twenty years after the passage of the vote.

In this Commonwealth it is not necessary to the legal discontinuance of a way, in addition to the vote or adjudication of the proper authority, that there should be an actual shutting up of the road or an exclusion of travel. A discontinuance adjudicated by the proper tribunal is complete, without more. See *Commonwealth* v. *Western*, 1 Pick. 136; *Tinker* v. *Russell*, 14 Pick. 279; *Hallock* v. *Franklin*, 2 Met. 558; *Commonwealth* v. *Boston & Albany Railroad*, 150 Mass. 174. Whether if a discontinued way is left open the town may be still liable for injuries to travellers is a different question. See Pub. Sts. c. 49, §§ 94, 95. That they are so liable in Connecticut is all that we understand the case of *Munson* v. *Derby*, 37 Conn. 298, 312, cited upon this

point by the plaintiffs, to decide.    *Tinker* v. *Russell, ubi supra,* seems to support the contrary doctrine.

The fact that the vote was to discontinue from and after the time when the new road, laid out on the same day, should be opened for use, did not make the discontinuance void.    While the laying of the new way and the discontinuance of the old one both result from the same vote or adjudication, it is reasonable that the public should not be excluded from the old road until the new one is ready for use.    Whether for the purpose of founding claims for damages the vote would be treated as a present discontinuance, we need not now consider.    It is enough to say that this clause did not render the action of the town illegal.

We have greater difficulty with the remaining objection urged, namely, the proviso that the owners of abutting lands should have the right to use the road as a private way for their especial use.    Conditional adjudications of tribunals having the power to lay out or discontinue ways are not uncommon, and have been often upheld.    Sometimes the condition has been declared void, and sometimes it has made the whole adjudication of no effect. See *Jones* v. *Andover,* 9 Pick. 146 ;  *Copeland* v. *Packard,* 16 Pick. 217; *Harrington* v. *Harrington,* 1 Met. 404 ; *Braintree* v. *County Commissioners,* 8 Cush. 546; *Holcomb* v. *Moore,* 4 Allen, 529 ; *Sears* v. *Fuller,* 137 Mass. 326 ; *Cheshire Turnpike* v. *Stevens,* 10 N. H. 133.    As stated in *Harrington* v. *Harrington,* the case of *Jones* v. *Andover* is a decisive authority to the point that the mere annexing of a condition does not render the laying out of a way invalid ; and we see no reason why proper conditions may not be annexed to a vote of discontinuance.    The same doctrine is to be inferred from the case of *Sears* v. *Fuller,* in which non-compliance with a condition precedent avoided the discontinuance.    *Harrington* v. *Harrington* also holds that a condition subsequent will not prevent the vote to which it is annexed from taking present effect; and that if the condition is contrary to law it alone is void, while the vote stands as if absolute and unconditional.    In *Braintree* v. *Norfolk,* however, the commissioners had incorporated in their order laying out a highway a requirement that the town should keep agents to attend to a drawbridge, and should light it; and because they had no authority to impose these burdens, it was held that the whole

order was void, the court considering it as one entire act, the unauthorized part of which was material, and could not be separated from the rest.   So in *Holcomb* v. *Moore*, the location by the selectmen contained a provision that the way should be used only during the time of sleighing; and because there was no authority in the law for the location of a way for use for a portion of the year only, such a location was considered objectionable as a basis for assessing damages, and was held unwarranted by law and of no validity.    But in *Cheshire Turnpike* v. *Stevens*, 10 N. H. 133, the town, having authority to discontinue a road, voted that it should be discontinued during their pleasure only, and be opened at any time by the town without paying damages to the owners of the land; and, as the town had no power to discontinue highways with any reservation or limitation, it was held that the limitation and reservation were void, and the discontinuance of the way absolute.   And in *Flagg* v. *Flagg*, 16 Gray, 175, the designation of a road as " a bridle road " in the location was held not to confine the right of way to any special mode of use; the implication being that the location was nevertheless valid.

Construing together the article in the warrant and the vote, with the facts that since the opening of the new road the town has not repaired the old one, and has maintained notices that it is not a public way, although opened and travelled, it may be argued that the intention of the town was not to discontinue the road, but to change it from a public town way to a private way for the especial use of those whose lands abutted upon it.   And if this were the better construction, as a town has no power to make such a change by mere vote, we should be required to hold that the proviso was such an integral part of the scheme as to make the vote void.   But we are not to presume that the town intended to go wholly beyond its powers.   That it might discontinue a town road was of course well known, and that it might attempt to do so upon condition is not surprising.   The proviso did not stipulate for anything to be done or to occur before the discontinuance should take effect.   Assuming that the town had no power to reserve to those owning abutting lands the right to use the road as a private way, the proviso was a reservation or limitation, and not such an integral part of the scheme that the

whole must fail.    Assuming that the laying out of the new road did not of itself work a discontinuance of the old one, whether both should be maintained was a question for determination, and the vote answered it in the negative.    The vote itself, and the facts that for many years the town has ceased to work the road, and maintained notices that it was not a public way, all show an intention to discontinue.    If the proviso was illegal because a private way could not be created by a vote, and the abutting owners would have no right to use the old road after the opening of the new one, the void proviso would not affect their claims for damages, and seems no reason for holding the discontinuance void.    We are of opinion that the vote was valid notwithstanding the proviso, and that the road at the time of the accident was not a town way or highway.    It was in one sense a travelled place, but it was not such a place within the meaning of the Pub. Sts. c. 112, § 163, unless the railroad corporation had been requested in writing by the selectmen, or required by the county commissioners, to erect and maintain boards at the crossing.    See St. 1849, c. 222; *Whittaker* v. *Boston & Maine Railroad*, 7 Gray, 98; St. 1859, c. 125; St. 1874, c. 372, § 123. There was no direct proof of any such request or direction, and the circumstances that the crossing was planked and that signs were erected over it have no tendency to show that any request or order under the statute had been made.    As in our opinion the evidence required a ruling that the crossing was not one to which the statute on which the actions were brought applies, the verdicts for the defendant were properly ordered, and it is unnecessary to consider the other questions raised.

*Exceptions overruled.*