109 S.E.2d 501 (1959)
201 Va. 87
Gladys SMITH et al.
v.
BOARD OF SUPERVISORS OF FRANKLIN COUNTY et al.
Supreme Court of Appeals of Virginia.
June 22, 1959.
*503 E. Griffith Dodson, Jr., Roanoke (Jack B. Coulter, Dodson, Pence & Coulter, Roanoke, on brief), for appellants.
John L. Walker, Roanoke (Leonard G. Muse, Roanoke, Virgil H. Goode, Rocky Mount, Woods, Rogers, Muse & Walker, Roanoke, on brief), for appellees.
Before EGGLESTON, C. J., and SPRATLEY, BUCHANAN, MILLER, WHITTLE, SNEAD and I'ANSON, JJ.
*502 WHITTLE, Justice.
This case involves an appeal from an order of the Circuit Court of Franklin County which determined, pursuant to § 33-76.9, Code of Virginia 1950, as amended, that public necessity did not exist for continuance, and the welfare of the public would be served best by the abandonment, of three sections of secondary roads and bridges in Franklin County. These roads and bridges had been previously ordered abandoned by the Board of Supervisors of the county pursuant to § 33-76.8, Code of 1950 as amended.
The parties to this appeal are appellants, Gladys Smith and twelve other citizens of Franklin County who are allegedly affected by the abandonment of the roads and bridges, and appellees, the Board of Supervisors of Franklin County and the Appalachian Power Company.
The record discloses that the background of the litigation results from the fact that *504 the Appalachian Power Company, hereinafter called Appalachian, was granted a license on June 5, 1958, by the State Corporation Commission of Virginia to construct a $42,000,000 hydro-electric project on Roanoke River in the counties of Bedford, Pittsylvania, Campbell, Franklin and Roanoke. A preliminary permit had previously been obtained from the Federal Power Commission to make all necessary investigations and studies preparatory to filing an application for a license under the Federal Power Act, 16 U.S.C.A. § 791a et seq. The proceeding to obtain the Federal license is now pending before the Federal Power Commission.
The project will eventually include two separate dams on Roanoke River; however, only the dam at Smith Mountain in Bedford and Pittsylvania counties and the reservoir necessary thereto are material to this case. The proposed dam will be about 600 feet in length; the height up to the spillway will be 200 feet; the elevation of the spillway will be 795 feet above mean sea level, and water will flow over at that elevation. The dam will flood approximately 20,000 acres of land in the three counties of Bedford, Pittsylvania and Franklin.
The record, maps and other exhibits filed in the case disclose that the impounded waters from the dam will flood forty-two sections of the State secondary system of highways as follows: twelve sections in Bedford County; two sections in Pittsylvania County; and twenty-eight sections in Franklin County. The sections of road in Bedford and Pittsylvania Counties have been ordered abandoned by their respective Boards, which orders are now final.
The Franklin County Board duly ordered the abandonment of the twenty-eight sections of road in that county. There was no appeal with respect to twenty-five of the sections. Appellants appealed to the Circuit Court (Code, § 33-76.9) with respect to three of the twenty-eight sections which include and have been designated as Kemp's Ford Bridge, Dudley's Ford Bridge, and Craft's Ford Bridge, these being the three sections of road involved on this appeal.
The Franklin County Board issued an order abandoning the three sections involved, in compliance with Code, § 33-76.8, which gives the Board authority to abandon a secondary road if it is "* * * satisfied that no public necessity exists for the continuance of the section" or "* * * that the welfare of the public would be served best by abandoning the section of road." It will be noted that the statute is in the disjunctive, and the road may be abandoned if either requirement is met.
Before acting in the matter, the Board of Supervisors secured the advice of representatives of the State Highway Department and held numerous hearings, including the statutory public hearing (Code, § 33-76.8), and thereafter, on October 21, 1957, entered its order abandoning the three roads. The Board was satisfied as to both requirements, i. e., (1) that no public necessity existed for continuing the three sections of road, and (2) that the welfare of the public would be served best by their abandonment.
On appeal from this order, as provided by Code, § 33-76.9, the case was tried de novo by the judge of the Circuit Court. The evidence was fully developed by numerous witnesses and many exhibits which pictured the entire situation. On February 28, 1958, the judge delivered his decision to the effect that two of the sections of road involved, Kemp's Ford Bridge and Dudley's Ford Bridge, should be abandoned, reserving his decision as to the third section involving Craft's Ford Bridge in order that he might be given an opportunity to further investigate this element of the case. On March 11, 1958, the court decided that the Craft's Ford Bridge section should also be abandoned and ordered the abandonment of the three sections upon the condition that certain other roads be constructed and *505 improved in order that appellants and the public generally be protected.
The significant issues in the case are the statutory requirements as to "whether public necessity exists for the continuance of" the sections of road, or "whether the welfare of the public will be served best by abandoning" them. The significant issues and the collateral issues raised by appellants will be treated in the order presented.
As to the public necessity for continuing the roads here in question, looking at the project in its entirety as presented by the maps, plans and the evidence, there can be no question that when the court's order is carried out and other roads and bridges are constructed to supplant the ones abandoned, no public necessity will exist for their continuance. The record discloses that the new roads will cost the Appalachian approximately $1,000,000, and they will amply serve the rural mail routes, the school busses, the appellants, and the public in general.
As aforesaid, in addition to finding that "no public necessity will exist for the continuance of said sections of road", the court also found "the welfare of the public will be served best by * * * the abandonment of these sections of road." As stated, the statutory provisions are in the disjunctive, and the building of the dam and the road abandonments are necessarily connected enterprises.
It is not challenged that the construction of this great hydro-electric plant will inure to the benefit of the citizens of Franklin County and to the public generally.
We are urged by appellants not to adopt the Federal concept of the term "public welfare." This we are not doing. We adopt our own concept of the phrase. Strictly speaking, the phrase "public welfare" is difficult of definition. It is broader than "necessity", and in this instance serves only as an additional ground for the court's abandonment of the roads. The whole scheme of things, gleaned from the record and the exhibits, shows that the abandonment of the roads will inure to to the prosperity, well-being, and convenience of the public at large, as distinguished from the advantage of individuals or a limited class, and there was ample evidence from which the court could so find.
We have repeatedly held that the judgment of the trial court on questions of fact is entitled to great weight and will not be disturbed unless it is plainly wrong or without evidence to support it. § 8-491, Code of Virginia 1950. Where the conclusion depends upon the weight to be given credible evidence, the decree or order based thereon has the same effect as the verdict of a jury and will be affirmed although there may be conflicts in the evidence. Worrie v. Boze, 191 Va. 916, 923, 62 S.E.2d 876, 879; Van Winckel v. Carter, 198 Va. 550, 551, 95 S.E.2d 148, 149; 1 Mich.Jur., Appeal and Error, §§ 276, 277, 278, pp. 705-710.
The first collateral issue raised by appellants to the significant issues just discussed is that the placing of "conditions" as to the construction of new roads before abandoning the three sections of road in question was improper.
The record discloses that the trial judge, after maturely considering the evidence and after taking several views of the roads and the areas involved, concluded in the exercise of his sound discretion that before the three sections of road should be abandoned certain other roads should be constructed or improved. Thus the abandonment of the three sections of road does not and cannot take effect unless and until there is compliance with the conditions set forth in the court's order.
There is no merit in this assignment. The fact is that the conditions imposed by the court were designed to protect appellants and the public generally. The relevant statutes do not contemplate that roads will be abandoned without *506 due consideration of the public interest. Neither section, 33-76.8 nor 33-76.9, requires the building of new roads, but there is nothing in the statute forbidding such, and it is apparent that the reasonable and convenient exercise of the discontinuing power in many cases would be seriously hindered or wholly prevented if conditional abandonment were not permitted. In any event, appellants are in no position to complain. The carrying out of the conditions imposed by the court will cost them nothing, and concededly they will be benefited thereby. The Appalachian, the party required to perform the conditions, is not complaining. We hold that the conditional abandonment of the three sections of road was proper under the facts and circumstances of the case. Town of New London v. Davis, 73 N.H. 72, 59 A. 369, 371; Coakley v. Boston & M. Railroad, 159 Mass. 32, 36, 33 N.E. 930.
Appellants' next contention is that roads may not be abandoned for "non-highway purposes". They argue that, since the abandonment will inure to the benefit of Appalachian, the roads are being abandoned for non-highway purposes. There is no merit in this contention. The statutes under which the roads were abandoned nowhere state that "only highway purposes" shall be the basis for abandonment, and there is nothing in the statutes to justify this narrow construction.
In the recent case of American Oil Co. v. Leaman, 199 Va. 637, 650, 101 S.E.2d 540, 550, which decision fully conforms to our holding in this case, Justice Miller, speaking for the court, said:
"Also the benefit that would inure to the public from the operation of the refinery and industry in the area was a circumstance that might be taken into account by the Board when it abandoned and altered roads in the area."
The fact that Appalachian will benefit is of no consequence. Section 62-68 of the Water Power Act shows the declared public policy of the State to be that "in order to conserve and utilize the otherwise wasted energy from the water powers in this State," it is declared to be "the policy of the State to encourage the utilization of the water resources" to the greatest practicable extent, and to encourage the construction of dams in any rivers or streams within the State "for the generation of hydro-electric energy." Garden Club of Virginia v. Virginia Public Service Co., 153 Va. 659, 673, 151 S.E. 161, 165.
The next question is: Did the trial court err in admitting and considering certain evidence? In this appellants complain of the court's so-called "independent investigation of the territory involved." This applies to the Craft's Ford Bridge road. It will be remembered that the judge announced his decision as to the other two sections of road on February 28, 1958, at which time he said he had to make his decision on the "evidence before me and what I have on view." He frankly referred to a conversation with the resident engineer of Franklin County and the resident engineer of Pittsylvania County. As to the Craft's Ford Bridge road the judge stated that he wanted to go back and take another look at that area. He then informed counsel "Now I am going to make up my mind on that I don't know which way I am going to make it up but I do want to make some personal investigation myself before I do it." Counsel for appellants made no objection to this suggestion. Neither did they object to the "personal investigation" which the judge said he wanted to make before deciding what should be done about Craft's Ford Bridge. In fact, no objection was made with respect to the action of the court until the entry of the order of May 15, 1958. While we do not approve this procedure (Newton v. Newton, 199 Va. 654, 661, 101 S.E.2d 580, 585), in this instance no timely objection was made, and the error, if any, was harmless.
The presumption is that the trial court decided the case on proper evidence, *507 not on information outside the record. In order to secure the right to have a question reviewed, objection must be interposed in the trial court at such time as will afford the court or the adverse party a reasonable opportunity to take appropriate preventive or corrective action. The party complaining should not acquiesce in the court's alleged improper proposal. The rule is that the objection must be made and exception taken when the occasion arises. In this instance appellants were put on notice as to what the judge intended to do, and they remained silent. If there was objection it should have been made at the time, otherwise the objection was waived. Rules of Court, § 1:8; Daniels v. Morris, 199 Va. 205, 213, 214, 98 S.E.2d 694, 699, 700; 3 Am.Jur., Appeal and Error, § 260, p. 40.
The final question is: Were appellants deprived of their property without due process of law or was their property taken or damaged for public use without just compensation contrary to the Constitutions of the United States and of Virginia?
These questions were not injected into the case until appellants filed their assignments of error. The sections of the Code here involved adequately protect the constitutional rights of all interested parties, and the record discloses that there was strict compliance with the statutes. All required notices were timely given, and at the various hearings everyone present was given an opportunity to express his views. The trial of the case was carefully conducted. Appellants have not been deprived of their property without due process of law. They have been deprived of no property. Neither has any of their property been taken or damaged for public use without just compensation in contravention of § 58 of the Constitution of Virginia. They have not been damaged in any constitutional sense. They have no vested right in public roads. Their property does not abut on any section of road that has been ordered abandoned, and they are not being deprived of access to a public road. Their complaint here is solely one of inconvenience.
In American Oil Co. v. Leaman, supra, 199 Va. at page 652, 101 S.E.2d at page 551, we said:
"In the closing of route 630 and relocation of route 173, no special injury or hardship has been inflicted upon Leaman as contrasted with the injury or hardship that may be suffered by other members of the public. As to him, as contrasted with the public, the difference in the injury, if any, suffered is not one of kind but of degree. His route by public roads to some areas is longer than it was before the roads were abandoned, relocated and improved, but that inconvenience or hardship is one of degree and does not invalidate the actions of the Board."
See also Hudson v. American Oil Co., D. C., 152 F.Supp. 757, affirmed 4 Cir., 253 F. 2d 27; City of Lynchburg v. Peters, 156 Va. 40, 48, 157 S.E. 769, 772.
For the reasons stated the order is
Affirmed.