COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Frank, Humphreys and Kelsey
Argued at Richmond, Virginia


ROHIT PATEL

                                                                OPINION BY
v.        Record No. 0875-12-2                    JUDGE ROBERT J. HUMPHREYS
                                                                APRIL 9, 2013
ILABEN R. PATEL


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Catherine C. Hammond, Judge

Donald K. Butler (Player B. Michelsen; Butler Armstrong, LLP, on
briefs), for appellant.

Michael S. Ewing (Batzli Wood & Stiles, PC, on brief), for appellee.


        Rohit Patel ("husband") appeals from a final order issued in the Circuit Court of Henrico

County ("circuit court") granting Ilaben R. Patel ("wife") a divorce from their marriage.  On

appeal, husband assigns error to the circuit court's finding regarding the value of certain marital

property for the purposes of equitable distribution and to the circuit court's findings of his

income for the purposes of determining child and spousal support.[1]  On brief, wife includes her

_____

[1] Specifically, husband contends (1) "[t]he [circuit court] erred in valuing Shanti, Inc. at
$7,9300,000 and in valuing Ashland, Inc., at $4,150,000 based on the MC Miller Appraisal of
Hampton Inn and Sleep Inn in Ashland, Virginia, and then by adding '. . . cash worth $274,299
. . .' (Shanti) '. . . plus cash totaling $117,000 . . .' (Ashland) which was not part of the Miller
appraisal but rather was a part of the Cummings and Salzman appraisals, which the Court
rejected," (2) "[t]he [circuit court] erred in finding a zero value for [husband's] interest in
Valleydale, LLC; Farmville LLC; Hanover LLC; and Picayune, LLC, which had a negative
value, where their debts exceeded the value of those assets and for which debts [husband] was
personally liable, and which debts were in essence marital debts that should be considered in
equitable distribution," (3) "[i]f the [circuit court] was correct in finding a zero value for entities
whose debt exceeded their assets, then the [circuit court] erred in assigning full value to
[husband's] loans receivable that were among the debts of those entities," and (4) "[t]he [circuit
court] erred in its determination of [husband's] income in making the child and spousal support
awards."

own assignment of error, arguing that if the circuit court did err in its valuation findings for the purposes of equitable distribution, the case should be remanded to the circuit court to reconsider its ruling on the division of marital property under Code § 20-107.3(E).[2] For the reasons that follow, we affirm.

## I.  Background

Husband and wife were married on February 1, 1985, and had one child during the marriage.  Wife filed for divorce, and the circuit court granted the parties a divorce on April 23, 2012.  As part of the final decree, the circuit court performed an equitable distribution of the parties' assets, awarded wife spousal support, and ordered husband to pay child support to wife. The circuit court determined that wife was entitled to 40% of the marital estate and $7,000 per month in spousal support in addition to awarding $1,245 per month in child support.  The issues on appeal relate to the value of husband's interests in and his earnings from his investments in several hotels and properties.

---

Husband also contends that "[t]he [circuit] court's failure to properly mark all Exhibits admitted at the [hearing] on February 13, 2012 was a clerical error" and thus, they should be considered in our analysis on appeal.  As wife concedes on brief that the exhibits were introduced into evidence at the proceedings below, and furthermore, it is clear from the record that the circuit court considered the exhibits and introduced them into evidence we will consider the exhibits for the purposes of this appeal.

[2] Specifically, wife argues

> [t]he [circuit court] correctly declined to assign negative values to several of Husband's businesses, and the [circuit court] did, in fact, consider Husband's personal guarantees of business loans when awarding him 60% of the marital property.  However, if the Court reverses the [circuit] court's ruling on this issue and orders the [circuit court] to assign negative values to Husband's startup businesses, the case should be remanded to the [circuit court] to reconsider its ruling on the division of the marital property under Code § 20-107.3(E).  To assign negative values to the businesses AND award Husband 60% of the marital estate on account of the same debts would amount to a double dip and an inequitable result.

- 2 -

The relevant investments are as follows: Husband has a 33 1/3% ownership interest in Shanti Investments, Inc. ("Shanti"), which owns and operates a Hampton Inn in Ashland, Virginia, a 40% interest in Ashland Investments, Inc. ("Ashland"), which owns and operates a Sleep Inn in Ashland, Virginia, a 15% interest in Valleydale Hospitality, LLC ("Valleydale"), which owns and operates a Homewood Suites in Hoover, Alabama, a 50% interest in Farmville Investments, LLC ("Farmville"), which owns land in Farmville, Virginia, a 30% interest in Hanover Hospitality, LLC ("Hanover"), which owns land in Hanover, Maryland,[3] a 25% interest in Picayune Hospitality, LLC ("Picayune"), which owns and operates a Holiday Inn Express in Picayune, Louisiana, and a full interest in Kishan, Inc. ("Kishan"), which owns and operates a Super 8 in Alliance, Ohio. There is no dispute that husband's interest in each of these properties is marital property.

## II. Analysis

### A. *Valuation of Shanti and Ashland for the Purposes of Equitable Distribution*

Husband first assigns error to the circuit court's valuation of husband's interests in Shanti and Ashland. Specifically, husband argues that the circuit court erred in determining the value of each company by using the value given by wife's expert, Mike Miller ("Miller"), adding to that value the cash that each company possessed as provided by husband's expert, Larry Salzman ("Salzman"), and then subtracting the debts of each company. For the reasons that follow, we find that the circuit court did not err.

At the divorce proceeding, wife introduced evidence of the value of Shanti and Ashland through her witness, Miller, whom the circuit court received as an expert in hotel real estate valuations. Miller used an "income approach" to determine the value of the Hampton Inn that was owned by Shanti, which yielded a value of $7,930,000. Using the same approach, Miller

---

[3] There is construction on a new hotel on this property, although construction began after the separation of the parties.

valued the Sleep Inn owned by Ashland at $4,150,000. Husband introduced his own appraisals of the two properties through his own expert witness, Michael Cummings ("Cummings"). Cummings used an income approach as well, and determined that the value of the Hampton Inn was $6,400,000 and the Sleep Inn was $3,500,000.

Husband also called Salzman, who was qualified by the circuit court as an expert, to testify as to the value of husband's interests in Shanti and Ashland. Salzman performed a fractional interest appraisal of husband's shares in the companies. To value husband's interests, Salzman started with the real estate values of the hotels owned by the respective companies, which were provided by Cummings, then he added the companies' other assets, and then subtracted the companies' liabilities. Salzman explained that the resulting sum was the net equity value of the company. Salzman then multiplied the net equity value of the company by husband's ownership percentage to get the *pro rata* equity value. Finally, Salzman discounted the *pro rata* equity value to account for other factors that arise as a result of a fractional ownership of a company.[4] Using this method, Salzman opined that, based on a real estate value of $6,400,000, cash reserves of $274,299, and a debt of $6,260,000, the net assets of Shanti equaled approximately $415,000. Salzman then determined that a 35% discount would be appropriate for husband's minority share and determined that husband's shares would be worth $90,000. Similarly, Salzman testified that Ashland, based on a real estate value of $3,500,000, cash reserves of $117,000, and debt of approximately $2,148,000, had net assets of $1,469,000. Salzman determined that a 40% discount would be appropriate for husband's interest in Ashland, and testified that husband's shares were worth $350,000.

---

[4] Such factors include the "up side of the real estate, down side of the real estate, the number of other owners, magnitude, income characteristics, control or lack of control, form of ownership, sometimes partition ability, finance ability, [and the] the overall marketability" of the fractional interest.

The circuit court found that "the accurate value [of Shanti] is $7,930,000.00. In addition, there is cash worth $274,299.00, bringing the overall value to $8,204,299.00. From this amount the loans totaling $6,260,000.00 should be subtracted, leaving a value of $1,944,299.00. [Husband] owns 33.33%, with a value of $648,035.00." The circuit court went on to find that "[w]ith respect to Ashland, Inc., the value is $4,150,000.00 plus cash totaling $117,000.00, less mortgage loans of $2,147,780.00 and loans of $560,587.00 owed to shareholders. The total value is $1,558,633.00, and [husband] owns 40%, or $623,453.00." In reaching its ultimate finding on the value of husband's interest for the purposes of equitable distribution, the circuit court expressly declined to include Salzman's fractional discount of husband's shares in Shanti and Ashland.[5] As "[t]he value of property is an issue of fact, not of law," Howell v. Howell, 31 Va. App. 332, 340, 523 S.E.2d 514, 518 (2000), we are bound by this finding on appeal, unless it is plainly wrong or without evidence to support it, Smith v. Board of Supervisors, 201 Va. 87, 91, 109 S.E.2d 501, 505 (1959).

We begin our review by noting that "'[circuit] courts valuing marital property for the purpose of making a monetary award must determine from the evidence that value which represents the property's *intrinsic worth* to the parties . . . .'" Howell, 31 Va. App. at 338, 523 S.E.2d at 517 (emphasis added) (quoting Bosserman v. Bosserman, 9 Va. App. 1, 6, 384 S.E.2d 104, 107 (1989)).

> Intrinsic value is a very subjective concept that looks to the worth
> of the property to the parties. The methods of valuation must take
> into consideration the parties themselves and the different
> situations in which they exist. The item may have no established

---

[5] We do not agree with husband's characterization that the circuit court "rejected" Salzman's testimony. On the contrary, the circuit court clearly accepted Salzman's method of valuing the *pro rata* equity value of husband's interests in the companies. However, the circuit court did not consider Salzman's discount of husband's share of the company for the purposes of equitable distribution, as it was not proper to do so under the relevant "intrinsic value" review. Instead, the circuit court determined that "the fact [that husband's] partial interests are not liquid and not easily transferred [are] considered [as part of] factor 8 of Section 20-107.3(E)."

market value, and neither party may contemplate selling the item; indeed, sale may be restricted or forbidden. Commonly, one party will continue to enjoy the benefits of the property while the other must relinquish all future benefits. Still, its intrinsic value must be translated into a monetary amount. The parties must rely on accepted methods of valuation, but the particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples.

Id. at 339, 523 S.E.2d at 517-18. Furthermore,

[b]ecause intrinsic value must depend on the facts of the case, we give great weight to the findings of the [circuit] court. We affirm if the evidence supports the findings and if the [circuit] court finds a reasonable evaluation based on proven methodology and on the application of it to the particular facts of the case.

Id. at 339, 523 S.E.2d at 518.

In this case, three different experts testified as to the value of these two companies. Miller and Cummings both used an income approach to determine the values *of the hotels operated by the companies*. Salzman calculated the full values *of the companies themselves*, and then determined the value of husband's interests in the companies by discounting the value of his shares to account for his fractional interest. The circuit court ultimately found Miller's appraisal to be more persuasive in valuing the hotels, and it is well established that a circuit "court has discretion to resolve conflicting expert testimony to determine an asset's value." Howell, 31 Va. App. at 341, 523 S.E.2d at 519. The circuit court then determined the full value of the companies using Salzman's method; that is, the circuit court added in additional assets owned by the companies besides the hotels, which was cash in this case, and then subtracted the companies' debts. However, the circuit court did not discount the value of husband's shares using Salzman's method for fractional interests. As the relevant value for the purposes of equitable distribution is the intrinsic value of the property, the circuit court did not err in rejecting Salzman's discount. Instead, the circuit court considered the illiquid nature of

- 6 -

husband's interests in the companies when determining the "amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment" for the equitable distribution of the marital property under Code § 20-107.3(E).  However, it did not do so in establishing the value of the interests themselves under Code § 20-107.3(A).  Thus, it is clear that the circuit court did not err in its valuation of husband's interests in Shanti and Ashland.

## B. *Valleydale, Farmville, Hanover, and Picayune*

Husband next contends that the circuit court erred in assigning a value of zero to his interests in Valleydale, Farmville, Hanover, and Picayune despite the fact that each of the entities had a negative net value.  We disagree.

On appeal, neither party disputes the fact that each of these entities has a negative value. Nevertheless, the circuit court found that, for the purposes of assigning value to husband's interests in these investments for equitable distribution purposes, each entity had a value of zero. The circuit court found "the intrinsic value for [Valleydale, Farmville, Hanover, and Picayune] is zero because the debts of each exceed the value of each."  The circuit court held that an offset for the total value of a marital estate based on the negative value of one asset "is not recognized in Virginia law governing the equitable distribution of marital property.  If the subtraction of marital debt from the value of a marital asset leaves a negative total, the net value of the asset is zero.  See Hodges v. Hodges, 2 Va. App. 508, 515 (1986)."

While the value of property is an issue of fact, the circuit court found that husband's interests in the entities should be given no value as a matter of law under Hodges, and thus we must apply a *de novo* standard of review.  See Roseborough v. Commonwealth, 281 Va. 233, 237, 704 S.E.2d 414, 416 (2011).

In Hodges we stated,

> Code § 20-107.3(D) requires that the monetary award be "based upon the equities and the rights and interest of each party in the marital property." Where the marital property is encumbered with indebtedness which equals or exceeds its value, then for purposes of a monetary award it is essentially of no value. Without value, there is no basis for a monetary award.

Hodges, 2 Va. App. at 515, 347 S.E.2d at 138.[6]

Unfortunately, Hodges is silent as to the reasoning behind its holding. However, the rationale of this Court's decision in Hodges becomes clear in the context of a case such as this. Here, the marital property at issue includes husband's interests in several companies that own and operate hotels. Companies, especially those that are young or expanding, often need to incur a substantial amount of debt and leverage that debt in order to generate a profit or expand operations. However, simply because a company's debts exceed its assets at a given point in time does not mean that the company has a negative value. Nor does it mean that the company is incapable of generating profits or that the company does not have a positive cash flow capable of paying off any debt. Instead, it merely shows that *at the time of valuation* the company has more debt than assets.

Husband argues that the facts of this case are distinguishable from the facts in Hodges, because husband was personally liable for the debts of the companies. Thus, he argues, if the company does go out of business, the debts will exceed the assets of the company and he will be liable for the excess and therefore the excess should count as marital debt. This argument is misguided. In this case, the calculation of the value of husband's interests in these four companies revolves around their intrinsic value at the time of the evidentiary hearing. Code § 20-107.3(A); see also Thomas v. Thomas, 40 Va. App. 639, 646, 580 S.E.2d 503, 506 (2003)

---

[6] We note that at least one other jurisdiction treats such indebted marital property similarly. See Kline v. Kline, 581 A.2d 1300, 1308 (Md. Ct. Spec. App. 1990).

("Generally, a date as near as possible to the evidentiary hearing should be used for valuation purposes."). There was no indication in the record that any of these companies were insolvent or on a path towards bankruptcy at that time. On the contrary, several of the companies involved brand new hotels or properties that were purchased with the intent to develop new hotels on them. Thus, the fact that husband *may* ultimately be personally liable on the debts at some point in the future is not properly part of the present valuation calculus, as there was no indication that the husband was *actually or likely* liable for the debts at the time of the evidentiary hearing.

### C. Husband's Loans to the Companies

Husband also made personal loans to some of the companies as follows: Ashland – $224, 235, Farmville – $275,185; Hanover – $550,500; Picayune – $256,250; and Valleydale – $526,500. In its ruling on equitable distribution, the circuit court awarded husband the notes payable to him under the loans and valued them collectively as an asset worth $1,910,710. Husband argues on appeal that these notes payable, which are from the companies that the circuit court assigned a zero value to, should not count as a marital asset, as the circuit court found that the companies had no value or debts far exceeding their value. Husband's argument fails for many of the same reasons articulated in Section II(B) of this opinion.

Husband's argument relies on the premise that, because the company's assets are currently worth less than the collective debt, these debts are worthless. However, as discussed earlier, the intrinsic values of these loans receivable are to be determined at the date of the evidentiary hearing. At that point, the companies were still operating, and there was no indication that they were planning on ceasing such operations. Furthermore, there was no indication that any of the companies had defaulted on any of the loans. Thus, the circuit court was not plainly wrong in finding that the loans were "valid debts incurred by going concerns" and that the companies "have the ability to make distributions to shareholders or repay the notes

to [husband]." Thus, the circuit court did not err in awarding husband the loans receivable from the companies, and determining that they were worth their full value for the purposes of equitable distribution.

### D. Husband's Income

Finally, husband argues that the circuit court erred in its finding regarding his income in fashioning the child and spousal support awards. We disagree.

The issue of husband's income is a question of fact, and "the judgment of the [circuit] court on questions of fact is entitled to great weight and will not be disturbed unless it is plainly wrong or without evidence to support it." Smith, 201 Va. at 91, 109 S.E.2d at 505. At the equitable distribution hearing, wife tendered, and the circuit court accepted, Robert Raymond ("Raymond") as an expert CPA forensic accountant and business evaluator. Raymond testified that he reviewed husband's tax returns and reports prepared by other experts in the case to perform an analysis of husband's income. Raymond used a three-year average, from 2008 to 2010, to determine husband's income. Raymond used this period in order to account for "a couple of [non-recurring] events[7] that [he] adjusted for in 2009 and 2010," and under this approach he was able to "see the numbers did not vary that much once [they were] adjusted for those [non-recurring] events." Ultimately, Raymond determined that husband's monthly income was $31,736 in 2010, $35,681 in 2009, and $31,246 in 2008. The average of these three values, rounded to the nearest dollar, is $32,888. Thus, there was clearly sufficient evidence to support the circuit court's factual finding.

---

[7] The adjustments Raymond made related to husband's interests in Picayune and Valleydale. Raymond adjusted for a $2,300,000 depreciation for Picayune that was based on a "2009 Congress . . . provision allowing special depreciation allowances of up to 50 percent of qualified property" and a $1,200,000 special depreciation for Valleydale. Raymond testified that it was "appropriate to adjust for that in determining spousal support for two reasons: One, it's nonrecurring, it's a startup, and hopefully the project will succeed; and two, the losses are non cash loss that is created entirely to stimulate the economy."

Nevertheless, husband argues that the circuit court was wrong in accepting Raymond's adjustments based on the testimony of another expert witness, Leslie Taylor ("Taylor"). Taylor testified that Raymond's method of including the two depreciable losses in calculating the income of Picayune and Valleydale would only serve to "get the income way up" when in actuality, husband "had a financial loss there, that was deductible for tax purposes, they are deductible from his income. It's income [husband] didn't have." However, "a [circuit] court is not required to accept the opinion of an expert. 'It is well established that the trier of fact ascertains [an expert] witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony.'" Piatt v. Piatt, 27 Va. App. 426, 434-35, 499 S.E.2d 567, 571 (1998) (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc)). Thus, the circuit court was entitled to disregard Taylor's testimony in favor of Raymond's testimony.

Husband also argues that the circuit court was wrong in its income calculation because it did not account for actual cash flow. Code § 20-107.1(A) states, in relevant part, that "upon the entry of a decree providing . . . for a divorce, whether from the bond of matrimony or from bed and board . . . the court may make such further decree as it shall deem expedient concerning the maintenance and support of the spouses." Subsection E goes on to require a court to consider certain enumerated factors before determining the nature, amount, and duration of an award. Of note, the statute requires that the circuit court must consider both the "obligations, needs and financial resources of the parties" and the "property interests of the parties, both real and personal, tangible and intangible."[8]

---

[8] We also note that the considerations underlying a circuit court's decision regarding spousal support are wholly different than the considerations regarding equitable distribution. "'Spousal support involves a legal duty flowing from one spouse to the other by virtue of the marital relationship. By contrast, a monetary award does not flow from any legal duty, but involves an adjustment of the equities, rights and interests of the parties in marital property.'" Stumbo v. Stumbo, 20 Va. App. 685, 691-92, 460 S.E.2d 591, 594-95 (1995) (quoting Brown v.

The circuit court can consider any income husband receives from his interests in the companies, whether distributed or not, in calculating spousal support. While actual distributions are clearly income and are thus relevant to spousal support, undistributed proceeds are equally relevant. Undistributed proceeds remain within the company, and thus, husband's interest in the company will reflect the reinvestment accordingly. As a circuit court must consider the "property interests of the parties, both real and personal, tangible and intangible," the income would be accounted for in either instance.

### III. Conclusion

For the aforementioned reasons, we affirm the judgment of the circuit court. [9]

Affirmed.

---

Brown, 5 Va. App. 238, 246, 361 S.E.2d 364, 368 (1987)). "The one-time equitable distribution of property completed by Code § 20-107.3 is based on the accrued rights of the parties in the distributed property. This is a separate consideration from that necessary to measure the current financial positions of the parties in determining spousal support under Code § 20-107.1. Different statutory considerations are mandated for each." Moreno v. Moreno, 24 Va. App. 190, 198, 480 S.E.2d 792, 796 (1997).

[9] Because we hold that the circuit court did not err with regard to husband's assignments of error, we need not and do not address wife's assignment of error.