UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Huff and Senior Judge Haley


MICHAEL R. PLIUSKAITIS

                                                    MEMORANDUM OPINION[*]
v.      Record No. 0423-13-4                              PER CURIAM
                                                     OCTOBER 8, 2013
TERESA M. PLIUSKAITIS


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Arthur B. Vieregg, Judge *Pro Tempore*

(Edward V. O'Connor, Jr., on brief), for appellant.

(David L. Duff; The Duff Law Firm, on brief), for appellee.


Michael R. Pliuskaitis (husband) appeals a final decree of divorce. Husband argues that the trial court erred (1) by determining that husband "converted joint funds totaling $48,149.29 from the home equity line of credit and $3,000 from the joint savings account to personal use and not for a proper purpose"; (2) by including "the cost of the children's health care when there was no evidence of any such cost presented and there was no evidence that it was reasonably available to either party"; (3) by imputing income to husband for the purpose of calculating child support; (4) by denying husband's request for an award based on Teresa M. Pliuskaitis' (wife) use of marital funds to pay her children's college expenses; and (5) in its valuation of SNOWbird Aquatics, Inc. ("SNOW"). Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

In 1998, husband and wife decided to form a swim club in Loudoun County. On August 6, 1998, wife, with financial assistance from her father, incorporated SNOW. Wife was the sole shareholder and director, and husband was the president. Wife managed SNOW's business and financial matters, while husband was responsible for swimming lessons, coaching, swim meet scheduling, and leasing swim lanes.

Husband and wife married on September 11, 1999. Two children were born of the marriage.[1]

During the marriage, SNOW grew in the number of swimmers and coaches. It operated swim programs at two sites. Beginning in 2007, wife failed to pay SNOW's federal and state employee withholding taxes. Wife did not inform husband of the tax liability until October 31, 2010.

In December 2010, husband learned that unbeknownst to him, wife paid $56,194.80 toward her children's college expenses. Although wife's former husband was responsible for these expenses, wife paid them from marital funds.

After learning of the tax liability and wife's withdrawal of marital funds for the college expenses, husband withdrew $48,149.29 from the parties' home equity line of credit and $6,000 from the joint savings account and deposited the funds into his separate checking account.

In August 2011, husband went to assist his mother, who lived in Canada and was suffering from Alzheimer's. He did not return until November 5 or 6, 2011. On November 7, 2011, SNOW placed husband on a leave of absence. On December 9, 2011, SNOW terminated husband.

---

[1] Wife also had children from a previous marriage.

In early November 2011, wife filed a complaint for divorce, to which husband filed an answer and counterclaim. Wife later filed an amended complaint, to which husband responded.

On December 4 and 5, 2012, the parties presented their evidence and argument to the trial court. On January 14, 2013, the trial court issued a letter opinion. It granted wife a divorce based on the parties living separate and apart for more than one year. Furthermore, the trial court made an equitable distribution award, denied spousal support to husband, calculated child support, and denied each party's request for attorney's fees. The trial court entered a final order on February 2, 2013. On February 6, 2013, husband filed a motion for reconsideration, which was denied by the trial court on February 20, 2013. On February 22, 2013, husband filed a second motion for reconsideration. On February 27, 2013, the trial court denied the second motion for reconsideration because husband had no authority to file a second motion for reconsideration. The trial court found that the second motion for reconsideration was "especially inappropriate when filed without leave of court after a final order has been entered denying the first motion for reconsideration." This appeal followed.

ANALYSIS

*Assignment of error 1*

Husband argues that the trial court erred in determining that he "converted joint funds totaling $48,149.29 from the home equity line of credit and $3,000 from the joint savings account to personal use and not for a proper purpose."

On appeal, "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994) (citing Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)).

The trial court concluded that the parties agreed to divorce in September 2010, and as a result, husband retained an attorney. Subsequently, husband learned that wife had not paid the payroll withholding taxes for SNOW and she paid $56,194.80 for her son's college expenses on behalf of her ex-husband. On December 7, 2010, husband withdrew $48,149.29 from the home equity line of credit and $6,000 from the joint savings account. He deposited the funds into his Middleburg Bank account.

Wife filed a motion for an alternative valuation date. The trial court held that husband had the burden of proving that the use of the marital funds was for a proper purpose, and concluded that husband did not present any "persuasive" evidence at trial. Therefore, the trial court granted wife's motion for an alternative distribution date. The trial court awarded wife $24,075, plus interest, for her share of the funds from the home equity line of credit, and $3,000, plus interest, for her share of the funds from the savings account.

On appeal, husband contends he offered evidence to prove that he used the funds for a proper purpose. At trial, wife submitted an exhibit, which summarized the deposits and withdrawals from husband's Middleburg Bank account. Husband referred to this exhibit to explain his use of the funds. He testified that he used some of the money for the parties' contributions to a business entity, Loudoun Swim & Triathlon (LST), owned by the parties and another individual. He also testified that he used some of the funds for home improvement projects and closing costs for a house that the parties jointly owned. He further explained he used some of the funds for SNOW operations and for coaching expenses or costs. While husband testified about how the funds were used, he presented no documentation for these expenditures.

"Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money

was spent for a proper purpose." Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990) (citations omitted). "If the party is unable to offer sufficient proof, the court must value the property at a date other than the date of the evidentiary hearing so as to achieve an equitable result." Id. at 587, 397 S.E.2d at 261.

The trial court held that husband did not use the funds for a proper purpose. The trial court dismissed husband's argument that some of the funds were used for LST. The trial court held that husband's "unauthorized investment of marital funds in the LST venture does not constitute a proper purpose any more than his unauthorized use of such marital funds to gamble at a casino to increase the family bank account would constitute a proper purpose." By finding those funds were not used for a proper purpose, the trial court implicitly found husband's explanation not credible.

Based on the record, the trial court did not err in holding that husband failed to show that he used the monies from the home equity line of credit and joint savings account for a proper purpose.

*Assignment of error 2*

Husband argues that the trial court improperly included the cost of the children's health care into the child support calculations when there was no evidence of any such cost and there was no evidence that health insurance was reasonably available to either party.

In its letter opinion dated January 14, 2013, the trial court determined the presumptive child support guidelines. It also stated the following:

> In addition, the income and expense statements introduced into evidence do not reflect that either party has obtained health care policies covering the children. In accordance with Va. Code § 20-108.1.C [sic], [wife] is ordered to provide health care coverage for the parties' children within 21 days. The amount of such insurance premiums shall be deemed a change of circumstances for which [husband's] child support obligation may be increased in order that he pay a proportionate share of such

health care consistent with the child support guidelines of Va. Code § 20-108.2.

The final decree indicates that wife obtained health insurance for the children, and husband's child support obligation included "an additional $209.89 representing his proportionate share (42%) of [wife's] monthly cost for providing health insurance coverage for the parties' children ($499.75)."

On appeal, husband argues that the trial court should not have included the cost of the children's health insurance into the child support calculations without first receiving evidence of that cost. However, when the trial court issued its letter opinion, it did not include the cost of the children's health insurance into the child support calculation. It calculated the amount of child support, and then ordered wife to provide health insurance for the children.

The trial court did not exceed its authority by ordering wife to provide health insurance coverage for the children, as such authority is expressly provided by Code § 20-108.1(C), which states:

> In any proceeding under this title, Title 16.1, or Title 63.2 on the issue of determining child support, the court shall have the authority to order either party or both parties to provide health care coverage or cash medical support, as defined in § 63.2-1900, or both, for dependent children if reasonable under all the circumstances and health care coverage for a spouse or former spouse.

Once wife obtained health insurance for the children, the cost was included in the final decree. Code § 20-108.2(E) states:

> Any costs for health care coverage as defined in § 63.2-1900 and dental care coverage, when actually being paid by a parent or that parent's spouse, to the extent such costs are directly allocable to the child or children, and which are the extra costs of covering the child or children beyond whatever coverage the parent or that parent's spouse providing the coverage would otherwise have, shall be added to the basic child support obligation.

- 6 -

The trial court did not err in including the cost of the children's health insurance into husband's child support obligation, as it was directly provided for by Code § 20-108.2(E).

*Assignment of error 3*

Husband argues that the trial court erred by improperly imputing income to him for child support purposes. The evidence proved that husband earned $77,000 to $148,400 from 2006 until 2010 at SNOW. After he was terminated from SNOW, husband worked as a part-time trainer, earning $2,150 per month, or $28,500 per year. In addition, with money borrowed from his parents, husband purchased a franchise, Aqua-Tots, with plans to open a children's swimming lessons business.

Based on the evidence, the trial court held that husband was voluntarily underemployed and imputed income to him of $60,000 per year. The trial court noted that husband "voluntarily opted to form a future business that may not commence operations until the fall of 2013" and meanwhile, husband "failed diligently to seek full time employment that would afford him income consistent with his earning capability."

> In setting or modifying spousal support or child support, a court may impute income to a party voluntarily unemployed or underemployed. See Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994); Stubblebine v. Stubblebine, 22 Va. App. 703, 710, 473 S.E.2d 72, 75 (1996) (en banc). Whether a person is voluntarily unemployed or underemployed is a factual determination. In evaluating a request to impute income, the trial court must "consider the [parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children." Niemiec v. Commonwealth, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998).

Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 783-84 (1999).

Husband contends the trial court based the imputed income amount on a job offer that he received from Ottawa, Canada. At trial, husband testified that the only job offer he received was as a swim coach for the University of Ottawa swim team and for a private club. On appeal,

husband asserts that he did not take the job because he did not want to be so far away from his children.[2] In support of his argument, he relies on Broadhead v. Broadhead, 51 Va. App. 170, 655 S.E.2d 748 (2008), where this Court reversed the trial court and remanded the issue of whether father was voluntarily underemployed. The Court held that

> the trial court failed to consider the other factors relevant to an analysis of whether father is voluntarily underemployed in his current position, particularly whether father's efforts to find a position were reasonable and whether other positions in the Richmond area were available to father, utilizing his education and experience, at a pay level comparable to his former positions . . . .

Id. at 184-85, 655 S.E.2d at 754-55.

Contrary to husband's argument, the trial court specifically stated the "fact that that offer [the job offer from Ottawa, Canada] and his imputed income are the same is coincidental." The trial court held that the imputed income amount was based on the evidence presented, including husband's "excellent credentials and experience as a swim coach; that he had played a significant role in the formation of the SNOW program; and that he received compensation at SNOW well in excess of $60,000/year." The trial court further explained that it based its decision that husband was underemployed on "his failure to present significant . . . effort to find a more remunerative position than that of a part-time trainer; and that he sought fit to travel to Las Vegas to meet his paramour and presumably to gamble." The trial court also was concerned that "instead of any significant evidence of seeking a more remunerative position, he [husband] testified that he had devoted attention to pursuing a youth swimming center that would open next year." The trial court fully explained its rationale in imputing income to husband.

---

[2] The trial court noted that husband testified that the job offer was "withdrawn because his prospective employer learned he [husband] had earlier sued a swim club employer before he came to the United States."

Husband further argues that wife did not present any evidence of any availability of jobs for husband. However, as the trial court noted, husband did not make any efforts to find employment that more closely matched his earning capacity. Instead, he worked twenty hours per week as a part-time trainer.

Based on the evidence presented, the trial court did not err in imputing income of $60,000 per year to husband.

*Assignment of error 4*

Husband argues that the trial court erred by denying his request for an award based on wife's use of marital funds to pay her son's college expenses. Prior to September 2010, wife paid her ex-husband's share of $56,194.80 toward her son's college expenses. Husband argues that this payment should have been considered for equitable distribution purposes.

Rule 5A:20(e) mandates that appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error."

Husband did not comply with Rule 5A:20(e) because his opening brief does not contain any principles of law, or citation to legal authorities, or the record to fully develop his arguments.

Husband has the burden of showing that reversible error was committed. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Unsupported assertions of error "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

We find that husband's failure to comply with Rule 5A:20(e) is significant, so we will not consider the fourth assignment of error. See Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court erred, it was their duty to

present that error to us with legal authority to support their contention."); Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008).

*Assignment of error 5*

Husband argues that the trial court abused its discretion in valuing SNOW at $0. "As '[t]he value of property is an issue of fact, not of law,' Howell v. Howell, 31 Va. App. 332, 340, 523 S.E.2d 514, 518 (2000), we are bound by this finding on appeal, unless it is plainly wrong or without evidence to support it, Smith v. Board of Supervisors, 201 Va. 87, 91, 109 S.E.2d 501, 505 (1959)." Patel v. Patel, 61 Va. App. 714, 722, 740 S.E.2d 35, 39 (2013).

Husband contends that SNOW increased in value during the marriage because of the parties' significant efforts. See Code § 20-107.3(A)(3). He asserts that he should not be penalized because wife did not pay the payroll taxes.

Each party presented expert witnesses to testify about the value of SNOW. Wife's expert valued SNOW at $0, whereas husband's expert valued SNOW at $392,000. The trial court noted that the difference between the values was that husband's expert decided to "ignore the cumulative IRS debt of $609,392."

A court may "choose among conflicting assessments of value as long as its finding is supported by the evidence." McDavid, 19 Va. App. at 413, 451 S.E.2d at 718.

The trial court listed several reasons for why it accepted wife's expert as opposed to husband's expert. The trial court held that wife's expert's "experience and credentials are impressive," while husband's expert's experience and credentials are "significantly less impressive." The trial court further noted that husband's expert "merely attempted to criticize [wife's expert's] valuation opinions." Husband's expert did not attempt to value SNOW, and the trial court found "her opinion is questionable for that reasons [sic] alone." The trial court also

questioned the assumptions made by husband's expert and her failure to consider SNOW's current situation, including the IRS debt.

Based on the evidence, the trial court did not abuse its discretion in valuing SNOW at $0 because it found wife's expert to be more credible than husband's expert.

*Attorney's fees and costs*

Wife asks this Court to award her attorney's fees and costs incurred on appeal.  See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  Having reviewed and considered the entire record in this case, we deny wife's request for appellate attorney's fees and costs.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.